

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. KEVIN HILLMAN,          )   *Opinion issued February 13, 2019*
                                       )
                      Relator,         )
                                       )
v.                                     )   No. SC97171
                                       )
THE HONORABLE JOHN D. BEGER,           )
                                       )
                      Respondent.      )

and

STATE ex rel. ERICA J. LONG,           )
                                       )
                      Relator,         )
                                       )
v.                                     )   No. SC97331
                                       )
THE HONORABLE FRED COPELAND,           )
                                       )
                      Respondent.      )

### ORIGINAL PROCEEDINGS IN PROHIBITION

The issue in these cases is whether a probationer must be discharged from probation as a result of Earned Compliance Credits ("ECCs") accrued under section

217.703,[1] notwithstanding the prohibition in section 559.105.2[2] against such a discharge if the probationer has failed to pay the full amount of court-ordered restitution. Because section 559.105.2 takes precedence over section 217.703.7, the preliminary writ of prohibition in Mr. Hillman's case is made permanent and the preliminary writ of prohibition in Ms. Long's case is quashed.

## BACKGROUND

This Court has consolidated, for purposes of this opinion only, two separate writ petitions. Even though the central legal issue presented in each of the cases is the same, the underlying facts and procedural postures are slightly different.

First, Ms. Nettie Pallai ("Pallai") pleaded guilty in August 2014 to first-degree property damage, agreeing to a suspended execution of sentence of four years in prison and a probation term of five years. The plea agreement provided Pallai would pay $5,104 in restitution in amounts of no less than $50 per month and stated: "No earned compliance credits until restitution is paid in full." Pallai made sporadic payments on the restitution balance, but has not paid the full amount owed. In January 2018, the state filed a motion to revoke Pallai's probation due to her failure to pay the restitution ordered. In response, Pallai filed a motion for discharge from probation, alleging she had accrued sufficient ECCs at that time to be discharged under section 213.703.7. Respondent, the Honorable John D. Beger, sustained Pallai's motion but stayed the order

---

[1]  All statutory citations to section 217.703 are to RSMo Cum. Supp. 2017, unless otherwise indicated.

[2]  All statutory citations to section 559.105 are to RSMo 2016, unless otherwise indicated.

discharging her from probation to provide the state time to seek a remedial writ in an appellate court. The prosecutor (and Relator in this case), Mr. Kevin Hillman, having been denied relief in the court of appeals, petitioned this Court for a writ of prohibition. This Court issued a preliminary writ of prohibition preventing Judge Beger from discharging Pallai from probation.[3]

In the second case, Ms. Erica Long ("Long") pleaded guilty in September 2014 to first-degree property damage. As part of her plea agreement, the circuit court suspended the imposition of sentence; placed Long on probation for three years; and ordered her to pay court costs, $46 to the Crime Victim Compensation Fund, and $300 to the Pemiscot County Law Enforcement Restitution Fund. In May 2016, the Missouri Board of Probation and Parole ("the Board") filed an initial violation report alleging Long failed to comply with the conditions of her probation because she had fallen behind in restitution. Following a June 2016 probation revocation hearing, the circuit court extended Long's probation an additional year. In December 2017, the Board filed a second probation violation report, again citing Long's failure to pay restitution. Subsequently, in March 2018, Long moved to be discharged from probation, arguing she had accrued sufficient ECCs to be discharged from probation under section 213.703.7 and, therefore, the circuit court lacked authority to revoke her probation. Respondent, the Honorable Fred Copeland, overruled Long's motion. Having been denied relief by the court of appeals,

---

[3] It reasonably may be argued that the language of Pallai's plea agreement shows she waived her right to apply accrued ECCs under section 217.703.7. But, because the Court holds she had no such right under section 559.105.2, it declines to decide her case on this ground.

Long (Relator in this case) petitioned this Court for a writ a prohibition preventing Judge Copeland from doing anything other than discharging her from probation. This Court issued a preliminary writ of prohibition staying further action to discharge or revoke Long's probation until further order from this Court.

## DISCUSSION

This Court has the authority to issue remedial writs pursuant to article V, section 4.1 of the Missouri Constitution. "A writ of prohibition is available: (1) to prevent a usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 32 (Mo. banc 2010).

In the first case, Relator Hillman contends section 559.105 prohibits Judge Beger from discharging Pallai from probation because she has not paid the ordered restitution, notwithstanding that Pallai has accrued sufficient ECCs under section 217.703.3 to warrant such a discharge pursuant to section 217.703.7 if the restitution were paid in full. In the second case, Ms. Long asserts Judge Copeland lacked the authority to do anything other than to discharge her from probation pursuant to section 217.703.7 by applying the ECCs accrued to her under section 217.703.3, notwithstanding that she has not paid the ordered restitution in full.

The ECC scheme is entirely a statutory creation. Section 217.703 provides the ECC framework, which (stated generally) provides that for every full calendar month a

probationer is in compliance with the terms of her supervision, the term of probation shall be reduced by 30 days. § 217.703.3. Section 217.703.7 provides,

> Notwithstanding subsection 2 of section 217.730 to the contrary,[4] once the combination of time served in custody, if applicable, time served on probation, parole, or conditional release, and earned compliance credits satisfy the total term of probation, parole, or conditional release, the board or sentencing court **shall order** final discharge of the offender, so long as the offender has completed at least two years of his or her probation or parole, which shall include any time served in custody under section 217.718 and sections 559.036 and 559.115.

§ 217.703.7 (emphasis added).[5]

Accordingly, section 217.703.7 creates a mandatory duty to discharge a probationer from probation when she has served the total term of probation to which she was sentenced minus the ECCs she has accrued under section 217.703.3, provided she has served at least two years of probation. The central question in both cases now before

---

[4]  Section 217.730.2 is not relevant to this proceeding because it grants the Board the authority to make a final order of discharge before the expiration of the sentenced term in certain circumstances.

[5]  Effective August 28, 2018, the legislature amended this subsection of the statute as follows:

> Notwithstanding subsection 2 of section 217.730 to the contrary, once the combination of time served in custody, if applicable, time served on probation, parole, or conditional release, and earned compliance credits satisfy the total term of probation, parole, or conditional release, the board or sentencing court shall order final discharge of the offender, **so long as the offender has completed restitution** and at least two years of his or her probation, parole, or conditional release, which shall include any time served in custody under section 217.718 and sections 559.036 and 559.115.

§ 217.703.7, RSMo Supp. 2018 (emphasis added). This amendment is further discussed in footnote 8, below. Effective December 18, 2018, the legislature amended section 217.703 to add subsection 12, which concerns how ECCs are applied to probationers entering treatment courts, but that amendment is not relevant to this proceeding. *See* § 217.703.12, RSMo Supp. 2018.

the Court is whether this duty to discharge in section 217.703.7 conflicts with the

prohibition against discharge found in section 559.105.2, which states:

> *No person* ordered by the court to pay restitution pursuant to this section *shall be released* from probation until such restitution is complete. If full restitution is not made within the original term of probation, the court shall order the maximum term of probation[6] allowed for such offense.

§ 559.105.2 (emphasis added).

Any time a court is called upon to apply a statute, the primary obligation "is to

ascertain the intent of the legislature from the language used, to give effect to that intent

if possible, and to consider the words in their plain and ordinary meaning." *S. Metro.*

*Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009). If the

language of a statute is plain and unambiguous, this Court is bound to apply that language

as written and may not resort to canons of construction to arrive at a different result.

*Concerned Parents v. Caruthersville Sch. Dist.,* 548 S.W.2d 554, 559 (Mo. banc 1977)

---

6 Section 559.016 sets the outer limits for a term of probation based upon the different classes of offenses. *See* § 559.016.1, RSMo 2016. For felony cases, as here, the outer limit for probation is five years, and that term may be extended by one additional year if the probationer admits or the court finds the probationer violated the conditions of her probation. *See* § 559.016.3. But this cannot be what the legislature intended the phrase "maximum term of probation" to mean in the last sentence of section 559.105.2 because the condition precedent to ordering this "maximum term of probation" is set out in the beginning of that sentence, and it refers to the probationer having failed to pay restitution in full "within the original term of probation." Accordingly, the phrase "maximum term of probation" must mean the entire "original term of probation" ordered by the sentencing court plus the only extension the sentencing court is authorized to make under section 559.016.3, i.e., a one-year extension. Nothing in this last sentence of section 559.105.2 requires (or prohibits) a sentencing court to revoke a suspended imposition of sentence and impose a suspended execution of sentence because that is an entirely new sentence, not an extension of the original term of probation. Applying this understanding, Pallai's "maximum term of probation" was the originally ordered five-year term plus a one-year extension ordered under section 559.016.3. For Long, her "maximum term of probation" is the originally ordered three-year term plus the one-year extension ordered under section 559.016.3.

6

("words are to be taken in accord with their fair intendment and their natural and ordinary meaning," and, "[w]hen language is plain and unambiguous, no construction is required").

But, when two statutes – each plain and unambiguous on their own – conflict with each other, resort to certain canons of construction remains appropriate. *See Earth Island Inst. v. Union Elec. Co.*, 456 S.W.3d 27, 33 (Mo. banc 2015) ("identifying conflict between two statutes as a precondition to the application of the principles of statutory construction") (citing *State ex rel. City of Jennings v. Riley,* 236 S.W.3d 630, 631 (Mo. banc 2007) (quotation marks omitted)). Accordingly, because neither section 217.703.7 nor section 559.105.2 is ambiguous on its own, the threshold question in this case is whether there is a direct conflict in the operation of those two statutes. *Id.*

There is a conflict because section 217.703.7 provides that discharge from probation is ***mandatory*** any time a probationer serves the original term of probation as reduced by all ECCs accrued under section 217.703.3, but section 559.105.2 provides that discharge from probation is ***prohibited*** before a probationer has fully paid all court-ordered restitution. In certain circumstances, including particularly the two cases now before the Court, these two statutes conflict. "When two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together, a reviewing court must attempt to harmonize them and give them both effect." *Earth Island Inst.*, 456 S.W.3d at 33 (quotation marks omitted).

To resolve the conflict between sections 217.703 and 559.105, this Court now holds a probationer may accrue ECCs under section 217.703, but she may not be

7

discharged from probation by applying those ECCs to reduce her original term of probation unless and until she has paid the full amount of any court-ordered restitution.[7] In this manner, the conflicting statutes are harmonized, and both are given effect to the fullest extent possible. In light of this holding, Judge Beger acted in excess of his authority by attempting to order Pallai discharged from probation, and Judge Copeland did not exceed his authority in overruling Long's motion to be discharged from probation. Accordingly, the preliminary writ in the former case is made permanent and in the latter case is quashed.

The Court's conclusion is supported by a host of considerations, including – most importantly – the canons of construction pertaining to conflicting statutes. It is worth noting at the outset that, if applied "haphazardly or indiscriminately," the canons of statutory interpretation can lead to a problematic "result-oriented jurisprudence." *Parktown Imps, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672-73 (Mo. banc 2009). Instead, the canons of statutory interpretation must be applied in a genuine effort to determine what the legislature intended. *Id.* at 672.

Rarely will all canons align to counsel the same result. *See S. Metro. Fire Prot. Dist.*, 278 S.W.3d at 666 ("Most often, for every rule suggesting one resolution, another rule exists that suggests the contrary.") (citing Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand. L. Rev. 395, 401-06 (1950)). But, ordinarily, the preponderance of

---

[7] A local court rule cannot change this result. To the extent local rules conflict with the Court's construction of sections 559.105.2 and 217.703.7, they are invalid and of no force or effect.

the guidance offered by these canons generally will point in one direction, and this Court is well-advised to heed it when it does. Here, the guidance offered by the applicable canons of statutory interpretation persuasively supports the Court's holding.

First, "the doctrine of *in pari materia* recognizes that statutes relating to the same subject matter should be read together, but where one statute deals with the subject in general terms and the other deals in a specific way, to the extent they conflict, the specific statute prevails over the general statute." *State ex rel. Taylor v. Russell*, 449 S.W.3d 380, 382 (Mo. banc 2014) (alteration omitted). In these cases, it might be said that both the ECC regime and the restitution regime concern whether and when a probationer may be discharged from probation. But a closer examination is warranted. Section 217.703 provides the general framework for determining when a probationer accrues ECCs and when those credits can be applied to reduce the original probation term and discharge the probationer. Section 559.105.2, on the other hand, imposes a specific restriction – operative only when a probationer has been ordered to pay restitution – limiting a circuit court's authority to discharge a probationer when restitution has not been fully paid. As a result, section 217.703.7 is the more general statute because it applies to all probationers, and section 559.105.2 is the more specific statute because it applies only to the subset of probationers who have been ordered to pay restitution. Viewed in these terms, the conflict between section 217.703.7 and section 559.105.2 must be resolved in favor of the latter.

9

Second, section 559.105 was enacted later in time.[8] "[A] chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." *S. Metro. Fire Prot. Dist.*, 278 S.W.3d at 666. In 2005, the legislature first enacted section 559.105. H.B. 353, 93d Gen. Assemb., 1st Sess. (Mo. 2005). In 2012, the legislature first enacted section 217.703. H.B. 1525, 96th Gen. Assemb., 2d Sess. (Mo. 2012). Subsequently, in 2013, the legislature repealed and reenacted section 559.105 to add subsection 4, which gives a circuit court express authority to set the amount of restitution to be paid by a defendant and provides procedures to collect restitution from a defendant's inmate account at the department of corrections or, if a defendant is released from department of corrections on conditional release or parole but has yet to pay full restitution, for the prosecuting attorney to collect full restitution. H.B. 215, 97th Gen. Assemb., 1st Sess. (Mo. 2013). This amendment, in effect, bolstered the restitution imperative. Therefore, section 559.105 is the later statute

---

[8] It has been suggested that this Court is bound to apply the version of section 217.703.7 that became effective August 28, 2018, in deciding this case and, therefore, that it is the statute that was enacted later in time. This misperceives the nature of these proceedings. The Court is not ruling directly on the motions for discharge filed by Pallai and Long. Instead, the Court is ruling on two petitions for writs of prohibition in which the only issue is whether one or both Respondents exceeded their authority. It would be improper for this Court to resolve a petition for extraordinary writ on a ground that was never presented to or passed on by the circuit court. *Cf. State ex rel. Healea v. Tucker*, 545 S.W.3d 348, 354 (Mo. banc 2018) (denying extraordinary writ because, even though petitioner "discussed … his request to disqualify the entire Attorney General's Office from serving as special prosecutor in this case and his request to order the police department to purge its servers and case files, there was no indication from the docket sheets or from the transcripts that the trial court made a ruling on either request"). That said, the Court may take notice of the 2018 amendment to section 217.703.7 insofar as it sheds light on the proper resolution of the conflict between sections 217.703.7 and 559.105.2, and that analysis is set forth below.

10

and should be regarded as an exception to the general ECC provisions in section 217.703.[9]

Next, section 559.105 is remedial in nature. A remedial statute "is a statute enacted for the protection of life and property and in the interest of public welfare." *Hagan v. Dir. of Revenue*, 968 S.W.2d 704, 706 (Mo. banc 1998). The statutory scheme for restitution promotes the general public welfare because it aims to remediate losses suffered by crime victims. Because remedial statutes should be interpreted "in order to accomplish the greatest public good," *id.*, this Court's construction should give effect to the evident purpose of section 559.105 - i.e., that probationers who are required to pay restitution must, in fact, do so.

The 2018 amendment to section 217.703.7 (*see* note 5) also confirms the legislature's intent that section 559.105.2 always has been meant to prevail over section 217.703.7 because that amendment expressly provides that the restitution obligation survives ECC accrual. *See State v. Liberty*, 370 S.W.3d 537, 552 (Mo. banc 2012) ("it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior legislative sessions and, likewise acts passed at subsequent legislative

---

[9] Prior to these cases arising, section 217.703 was amended only as a housekeeping measure to reflect other amendments to the state's criminal code. *See* H.B. 215, 97th Gen. Assemb., 1st Sess. (Mo. 2013) (adding "rape in the second degree" and "sodomy in the second degree" to section 217.703.2), which grants a circuit court the authority to find certain offenders ineligible for ECCs based on certain factors as long as an offender has committed one of the crimes listed); H.B. 491, 97th Gen. Assemb., 2d Sess. (Mo. 2014) (further amending the list of offenses in section 217.703.2); H.B. 1371, 97th Gen. Assemb., 2d Sess. (Mo. 2014) (amending and renumbering the list of offenses in section 217.703.2).

11

session[s]") (alteration in original) (quoting *State ex rel. Jackson County v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975)).

Ordinarily, it is presumed that, when the legislature amends a statute, the legislature intended to effect some change in the existing law. *See Mid-Am. Television Co. v. State Tax Comm'n of Mo.*, 652 S.W.2d 674, 679 (Mo. banc 1983). But this is not always the case. The purpose of a particular change may be to clarify – not change – the existing law. *Id.* (holding an amendment regarding Missouri's federal income tax deduction was meant not to change the amount of that deduction but to correct "the many procedural irregularities that arose under the prior statute"). *See also City of Colo. Springs v. Powell*, 156 P.3d 461, 465-68 (Colo. 2007) (en banc) (recognizing the presumption that an amendment is intended to change the law may be rebutted if the statutory language, the legislative history, and preexisting ambiguities show the legislature meant only to clarify the law). Here, by adding language to section 217.703.7 expressly giving priority to restitution under section 559.105, the legislature made clear its intention was not to change the law but to clarify it by resolving a conflict between the two statutes.

Finally, the construction of a statutory scheme "should avoid unreasonable or absurd results." *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012). It would be an absurd result if the legislature intended to require a probationer to pay full restitution as a mandatory condition of her probation under section 559.105.2 prior to the running of the original term of probation, while simultaneously mandating the probationer be discharged from probation as soon as she accrued sufficient

ECCs, even though she had failed to pay her restitution obligation in full. Avoiding this absurd result is yet another reason why section 559.105.2 must prevail over section 217.703.7.

As the foregoing analysis of the applicable canons of statutory interpretation shows, there is no avoiding the conclusion that the legislature intends – and has always intended – for the restitution obligation under section 559.105.2 to take precedence over the application of ECCs under section 217.703  A probationer may accrue ECCs under section 217.703.3, but she may not be discharged from probation by applying those ECCs to shorten her term of probation under section 217.703.7 unless and until she pays any court-ordered restitution in full pursuant to section 559.105.2.[10]

---

[10]  Although this conclusion is inescapable, the Court does not reach it without some trepidation. An offender has no constitutional right to probation, *Smith v. State*, 517 S.W.2d 148, 150 (Mo. 1974), but the issue of crime victim restitution is addressed specifically in the Missouri Constitution, Mo. Const. art 1, § 32.1(4). The Constitution expressly gives the legislature the power to determine when and how the goal of restitution is pursued, *id*. at § 32.5, and, therefore, how the pursuit of that goal is to be balanced against the policies furthered by probation. The legislature's choice to permit probationers to accrue ECCs – but not to apply them to achieve an early discharge until court-ordered restitution is paid in full – may result in otherwise avoidable incarcerations. In the end, this will do little to advance the goal of restitution. But there are substantive constraints on the application of section 559.105.2 that will operate to check the worst effects of this choice. *See, e.g., State ex rel. Bowman v. Inman*, 516 S.W.3d 367, 369 (finding the amount of restitution must be restricted only to the victim's losses due to the offense); *State ex rel. Fleming v. Mo. Bd. of Prob. & Parole*, 515 S.W.3d 224, 233 (Mo. banc 2017) (holding a willfulness analysis is required for a trial court to revoke probation based on a probationer's failure to repay court costs); Mo. Const. art 1, § 11 (prohibiting imprisonment for debt, except for nonpayment of fines and penalties imposed by law). The present cases do not raise these issues or the issues addressed in *State ex rel. Parrott v. Martinez*, 496 S.W.3d 563 (Mo. App. 2016), because neither Pallai nor Long alleged below an inability to pay restitution – only that they had failed to pay it in full.

13

**CONCLUSION**

For the reasons set forth above, the preliminary writ prohibiting Judge Beger from discharging Pallai from probation is now made permanent, and the preliminary writ prohibiting Judge Copeland from taking any action other than discharging Long from probation is now quashed.

_____
Paul C. Wilson, Judge

All concur.