

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Appellant, | ) | |
| v. | ) | **WD82660** |
| | ) | |
| JEFFREY L. HOWARD, | ) | FILED: January 21, 2020 |
| Respondent. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF RANDOLPH COUNTY
### THE HONORABLE SCOTT A. HAYES, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE, ALOK AHUJA AND THOMAS N. CHAPMAN, JUDGES

The State appeals from the circuit court's judgment dismissing four counts of incest against Jeffrey Howard. The incest charges arose from Howard's alleged sexual misconduct with his adopted daughter, Jane Doe,[1] during a period of time before the adoption was vacated. The State contends that the circuit court erred in dismissing the charges because an otherwise vacated decree of adoption may be used to establish the ancestor or descendant by adoption element of incest at the time the conduct occurred. For reasons explained herein, we reverse the circuit court's judgment and remand for proceedings consistent with this opinion.

---

[1] In light of the sexual misconduct allegations in this case, Howard's formerly adopted daughter will not be referred to by name. *Cf.* § 595.226, RSMo 2016.

## FACTUAL AND PROCEDURAL HISTORY

On April 19, 2017, Howard and his wife adopted seventeen-year-old Doe. Approximately four months later, Howard began engaging in sexual intercourse with Doe. Doe initially reported that this sexual contact was forcible. Based on this disclosure, the State charged Howard, on January 2, 2018, with two counts of first-degree sodomy, two counts of first-degree rape, and four counts of incest with a descendant by adoption in violation of Section 568.020.1(1), RSMo 2016.[2]

On March 15, 2018, Doe petitioned the juvenile court to dissolve the April 19, 2017, decree of adoption and to restore her birth certificate to its pre-adoptive state. The court granted that motion and vacated the adoption on April 24, 2018.

On October 23, 2018, Howard moved to dismiss the counts charging him with incest. His motion alleged that, by vacating the adoption of Doe, the juvenile court had determined that the parent-child relationship never existed. Thus, Howard argued that he had not committed incest because Doe was never his descendant by adoption. On November 14, 2018, the State filed a second amended information charging Howard with four counts of incest after Doe recanted her previous statement that the sexual acts between her and Howard were not consensual.

On February 27, 2019, the circuit court held a hearing on Howard's motion to dismiss, which it granted nearly one month later. In dismissing the incest charges, the court explained that the vacation of the original adoption judgment rendered the adoption "void" such that it "fail[ed] to exist." The State appeals.

---

[2] All statutory references are to the Revised Statutes of Missouri 2016.

STANDARD OF REVIEW

Generally, this court reviews the circuit court's ruling on a motion to dismiss for an abuse of discretion. *State v. Clinch*, 335 S.W.3d 579, 583 (Mo. App. 2011). Where the facts are uncontested, however, and the only issue presented is a matter of statutory interpretation, we review the dismissal of a felony complaint *de novo*. *State v. Chase*, 490 S.W.3d 771, 773 (Mo. App. 2016). This is because the interpretation of a statute is a question of law, to which the circuit court is entitled no deference. *Id.*

## ANALYSIS

In Point I, the State asserts that the circuit court erred in dismissing the incest charges on the grounds that the vacated adoption judgment was void and therefore failed to exist. The State contends that the adoption decree, although subsequently vacated, can be used to establish that Doe was Howard's descendant by adoption at the time of the offense. In Point II, the State argues that canons of statutory interpretation disallow a result that renders unenforceable the prohibition in Section 568.020.1 on sexual acts between an ancestor and descendant by adoption. The State contends that any interpretation of Section 568.020.1 allowing Howard to escape prosecution would be contrary to legislative intent and would lead to absurd results. Because the two points on appeal are related, we will address them collectively.

Howard was charged with four violations of Section 568.020.1, which states:

1. A person commits the offense of incest if he or she marries or purports to marry or engages in sexual intercourse or deviate sexual intercourse with a person he or she knows to be, without regard to legitimacy, his or her:

(1) Ancestor or descendant by blood or adoption; or

(2) Stepchild, while the marriage creating that relationship exists; or

3

(3) Brother or sister of the whole or half-blood; or

(4) Uncle, aunt, nephew or niece of the whole blood.

Neither the State nor Howard have argued that the text of this statute is ambiguous.  In the absence of an ambiguity, we must ascertain and give effect to the intent of the legislature.  *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 604-05 (Mo. banc 2019)  "Any time a court is called upon to apply a statute, the primary obligation 'is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning.'"  *Id.* (quoting *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)).  "If the language of a statute is plain and unambiguous, [we are] bound to apply that language as written and may not resort to canons of construction to arrive at a different result."  *Id.* at 605.

Here, the plain language of Section 568.020.1(1) states that a person commits the offense of incest by engaging in sexual intercourse "with a person he or she knows to be . . . his or her [] [a]ncestor or descendant by blood or adoption[.]"  The present tense language expresses the legislature's clear intent to measure the criminality of the prohibited conduct at the time the sexual act occurred.

Despite this language, Howard argues that the statutory prohibition against incest can be lifted retroactively if Doe's adoptive status is rendered void *ab initio* (i.e., at its inception).  Howard asserts that even if he engaged in sexual intercourse with Doe while she was his adopted daughter, he is not guilty of incest because the court's ruling vacating the adoption reached back in time to purge the criminality of his sexual conduct.  He, therefore, asks us to engage in a legal fiction by ignoring his alleged

4

conduct because it has subsequently been imbued with new legal meaning, or more precisely, no legal meaning because the juvenile court had vacated the judgment and thereby declared that he was never Doe's adoptive father.

We find no basis for Howard's assertion that Doe's adoption was declared void *ab initio* by the juvenile court's judgment. Jane Doe petitioned the court to vacate the decree of adoption pursuant to Rule 74.06(b)(5). In granting the requested relief, the court stated that it "hereby exercise[d] its broad equitable powers as recognized by the Missouri Supreme Court, Missouri Rules of Civil Procedure and common law traditions to vacate the Judgment of Decree of Adoption[.]" The juvenile court then ordered the Missouri Bureau of Vital Records to restore Doe's birth certificate to its pre-adoptive state.

Rule 74.06 provides that a court may relieve parties from a final judgment or order if one of several grounds exist. In relevant part, Rule 74.06(b)(5), states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons . . . (5) . . . it is no longer equitable that the judgment remain in force." Our court has explained the scope of relief available under this provision:

> This component of [Rule 74.06(b)(5)] is based on traditional equity practice *which limits its application to judgments that have a prospective effect, as* contrasted to those that offer a present remedy for a past wrong. It addresses the situation *in which a subsequent circumstance* makes enforcement of such a judgment inequitable.

*Hollins v. Capital Sols. Invs. I, Inc.*, 477 S.W.3d 19, 26 (Mo. App. 2015) (alteration in original) (emphasis added) (quoting *Juenger v Brookdale Farms*, 871 S.W.2d 629, 631 (Mo. App. 1994)). This rule does not render a judgment void *ab initio* because its sole

5

purpose is to relieve parties of a judgment's *prospective* effects where a circumstance arising *subsequent to the issuance* of the judgment makes it inequitable for such judgment to remain in force.  *See id.*; *see also Juenger*, 871 S.W.2d at 631.

Here, the court determined that the circumstances subsequent to the issuance of the judgment that rendered its continuing enforcement inequitable were: (1) "Within [four] months after issuance of said adoption decree [Howard] began sexually assaulting Petitioner, [Jane Doe]"; (2) "Following his arrest, [Howard] admitted to sexually assaulting the Petitioner"; (3) "Following [Howard's] arrest, [Wife] evicted Petitioner, [Jane Doe], from the family home, and stopped providing any emotional or financial support to her"; (4) "[Wife] also repossessed the car that [Wife] and [Howard] had gifted Petitioner, [Jane Doe]"  Howard did not challenge the juvenile court's determination that Rule 74.06(b)(5) was properly invoked at the time.  In fact, Howard gave written consent to Doe's petition to vacate.  Nevertheless, Howard now asserts that the juvenile court did not exercise its power to vacate or set aside the decree pursuant to Rule 74.06(b)(5); instead, Howard avers that the juvenile court applied an extensive equitable power allowing it to annul an adoption and render it void *ab initio*.

In support of this argument, Howard directs this court to *In re McDuffee*, 352 S.W.2d 23, 27 (Mo. banc 1961), wherein the Supreme Court held that, despite there being no statute specifically authorizing such action, a court of equity could annul a valid decree of adoption if such annulment was in the best interests of the child.  Even if we were to agree with Howard that *McDuffee* survived the enactment of Rule 74.06 nearly twenty-seven years later and that a court has the power to annul an adoption at any

6

time, *McDuffee* does nothing to limit a court's ability to vacate an adoption under rule 74.06.  *See id.* at 26-27.  In fact, the *McDuffee* Court stated:

> [W]e entertain no doubt that the broad equitable powers vested in our courts of general jurisdiction . . . empower them to vacate a decree of adoption *upon any of the classical grounds that entitle such courts to vacate any other decree*, such as judgments procured by fraud or to prevent injustice where such final judgments were the result of unavoidable accident or excusable mistake.

*Id.* at 26 (emphasis added).  Therefore, the juvenile court could, and did, grant Doe relief under Rule 74.06(b)(5).[3]  Howard's contention that Sections 193.125.5-7[4] strictly limit the court to the binary choice of modifying or annulling a decree of adoption is similarly misplaced.  These statutes purport to do nothing more than obligate the clerk of the court and the state registrar to make and transmit certain reports once a decree of adoption has been modified or annulled.

---

[3] Even if the juvenile court in this case had acted under the authority of *McDuffee*, rather than under Rule 74.06(b)(5), we note that *McDuffee* recognizes a circuit court's inherent equitable authority "to annul *thenceforward* a priorly rendered valid decree of adoption[.]"  352 S.W.2d at 27 (emphasis added).  Thus, although it uses the term "annul," *McDuffee* itself recognizes that the adoption decree was not void at its inception, and that any "annulment" would operate only prospectively where it is based on post-adoption circumstances.

[4] These Sections read:

> 5. Whenever an adoption decree is amended or annulled, the clerk of the court shall prepare a report thereof, which shall include such facts as are necessary to identify the original adoption report and the facts amended in the adoption decree as shall be necessary to properly amend the birth record.

> 6. Not later than the fifteenth day of each calendar month or more frequently as directed by the state registrar the clerk of the court shall forward to the state registrar reports of decrees of adoption, annulment of adoption and amendments of decrees of adoption which were entered in the preceding month, together with such related reports as the state registrar shall require.

> 7. When the state registrar shall receive a report of adoption, annulment of adoption, or amendment of a decree of adoption for a person born outside this state, he or she shall forward such report to the state registrar in the state of birth.

§§ 193.125.5-7

Consequently, while Doe's adoption has been vacated by the juvenile court, that action is immaterial to the State's prosecution of Howard because Rule 74.06(b)(5) operates *prospectively*. *See Hollins*, 477 S.W.3d at 26; *see also Juenger*, 871 S.W.2d at 631. Howard's assertion is, therefore, incorrect because the juvenile court did not declare Howard's adoption of Doe void *ab initio*: instead, it vacated the adoption because post-adoption events made it inequitable to continue the adoption in effect. *See id.* This means that while Doe's decree of adoption became unenforceable on and from the day it was vacated, it could still be used to establish the descendant by adoption element of Section 568.020.1(1) for conduct occurring prior to the decree being vacated. To permit Howard to elude prosecution for the criminal conduct alleged to have been completed prior to the vacation of Doe's decree of adoption would be contrary to the plain language of Section 568.020.1(1), the express intent of the legislature in enacting the prohibition against incest, and the nature of prospective relief provided by Rule 74.06(b)(5). Points I and II are granted and the judgment is reversed and remanded.

## CONCLUSION

We reverse the judgment of dismissal and remand for proceedings consistent with this opinion.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR

8