

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

|  |  |
|---|---|
| | ) No. ED111300 |
| | ) |
| IN THE MATTER OF | ) Appeal from the Circuit Court of |
| ASHLEE NICOLE HUELSING | ) St. Charles County |
| | ) |
| | ) Honorable Philip J. Ohlms |
| | ) |
| | ) |
| | ) Filed: December 26, 2023 |

### Introduction

Center for Comprehensive Services, Inc. d/b/a NeuroRestorative Carbondale ("NeuroRestorative") appeals the probate division's order and judgment sustaining Tammy Huelsing's ("Huelsing") and Wells Fargo Bank, N.A.'s ("Wells Fargo" and collectively, "Respondents") motion to set aside a consent order and judgment ("consent judgment") addressing claims NeuroRestorative filed against Huelsing individually, in her capacity as guardian and conservator for her daughter, Ashlee, and in her capacity as co-trustee of a supplemental needs trust ("the trust") established for Ashlee's benefit.[1] NeuroRestorative raises five points on appeal arguing the probate division erred in setting aside the consent order and judgment. Huelsing moved to dismiss the appeal for lack of a final, appealable judgment, which was taken with the case.

---

[1] Because Huelsing and her daughter share the same last name, we will refer to Ashlee by her first name. No familiarity or disrespect is intended.

This Court holds the probate division's order and judgment setting aside the consent judgment is not appealable and Huelsing's motion to dismiss the appeal is sustained. NeuroRestorative's appeal is dismissed.

**Factual and Procedural Background**

*Ashlee's Medical Care*

When Ashlee was a minor, she was involved in an automobile accident and suffered a serious brain injury requiring around-the-clock professional care. Huelsing recovered damages for Ashlee's personal injuries and product liability when a settlement was reached. The trust was established on Ashlee's behalf with Huelsing and Wells Fargo serving as co-trustees. Huelsing was appointed Ashlee's guardian and conservator ("the Estate") by the probate division of the St. Charles County circuit court.

On January 8, 2018, Huelsing entered into an agreement with NeuroRestorative for Ashlee's inpatient care at its Carbondale, Illinois facility and signed several admission documents, including a "payment agreement" which Huelsing signed as Ashlee's guardian, not as the "Financially Responsible Party." Huelsing also signed a letter dated January 8, 2018, ("January 2018 letter") from NeuroRestorative addressed to "Tammy Huelsing-guardian." The January 2018 letter stated, "you have agreed to reimburse the facility a per diem rate of $760 per day for inpatient services to be provided." Huelsing signed the "Responsible Party" line at the bottom of the January 2018 letter. Huelsing tendered a check for $22,800 drawn from the trust account to pay for the first month of inpatient services, and Ashlee began receiving care.

In March 2019, NeuroRestorative filed a verified claim against the Estate in the probate division for the amount due for Ashlee's care, alleging Huelsing breached the January 2018 letter's payment terms. NeuroRestorative requested the probate division approve its verified claim against

2

the Estate, enter judgment for the outstanding balance of $294,120, and order the amount payable from the Estate or "Huelsing as Ashlee's conservator and personal guarantor." NeuroRestorative also requested the per diem rate going forward, attorney's fees, costs, and Ashlee's immediate discharge from its facility. In May 2019, Huelsing remitted a check to NeuroRestorative for $1,500 drawn from her personal account. On November 6, 2020, Huelsing's attorney withdrew representation by order of the probate division.

*Settlement Agreement and Consent Judgment*

On November 9, 2020, NeuroRestorative filed its first amended verified petition in the probate division alleging Huelsing breached her fiduciary duty as Ashlee's guardian and conservator and sought compensatory and punitive damages on the Estate's behalf. NeuroRestorative also sought Huelsing's removal as Ashlee's guardian and conservator. NeuroRestorative also filed a verified third-party petition against Huelsing individually and as co-trustee of the trust and against Wells Fargo as co-trustee. NeuroRestorative's claims against Huelsing included: (1) discovery of assets, (2) breach of contract, and (3) breach of trust. NeuroRestorative also brought a breach of trust claim against Wells Fargo.

Huelsing, acting *pro se*, contacted NeuroRestorative's counsel via email and requested to "discuss the situation and come to a cooperative solution, because [she] cannot afford an attorney." Huelsing and her adult son met with NeuroRestorative at NeuroRestorative's Illinois counsel's office on November 18, 2020, to discuss the outstanding balance and claims. At the meeting, NeuroRestorative indicated it would not settle for less than the amount due, which now exceeded $620,000. NeuroRestorative asked Huelsing about her personal ability to pay and her personal assets, including her home and vehicle. Huelsing stated she could pay $300 per month toward the balance and tendered a $5,000 check drawn from trust account. The parties agreed to settle.

On December 14, 2020, NeuroRestorative provided Huelsing with copies of the settlement agreement and the consent judgment it drafted and would submit for the probate division's approval. The settlement agreement was binding on Huelsing, individually, as guardian and conservator of the Estate, and as co-trustee of the trust. The settlement agreement stated, "[Huelsing] admits personal liability for the [balance due] pursuant to the [January 2018 letter]" and she admitted "at least some" of the distributions made from the trust account "were used for her own personal benefit and [her] conduct constituted a breach of her fiduciary duties to Ashlee." The settlement agreement stated the parties agreed to execute the consent judgment contemporaneously, which required the probate division's approval. The settlement agreement further stated, "[Huelsing] agrees to cooperate with NeuroRestorative in connection with the claim . . . against Wells Fargo for breach of trust," and "agreed to prepare and/or execute any and all documents which may become necessary to effectuate" the settlement agreement's intent (collectively, "cooperation clause"). If the probate division did not approve the settlement agreement and consent judgment, the settlement agreement "shall be null and void." The final paragraph indicated the parties "acknowledge that they have read and fully understand the terms of this Agreement, and that they are executing this Agreement voluntarily."

The consent judgment purported to resolve NeuroRestorative's verified claim against the Estate, its first amended verified petition, and its verified third-party petition, but only as to the claims against Huelsing, not Wells Fargo. The Estate agreed NeuroRestorative shall recover from it on its verified claim the balance due, plus 9% post-judgment interest, the statutory rate. NeuroRestorative dismissed its first amended verified petition claims against Huelsing without prejudice. Regarding the verified third-party petition, Huelsing individually and as co-trustee agreed she was liable for discovery of assets, breach of contract, and breach of trust. Huelsing

4

agreed NeuroRestorative shall recover the balance due, plus post-judgment interest at the statutory rate, but the judgment would be reduced by amounts collected or paid to NeuroRestorative by the Estate or in connection with its breach of trust claim against Wells Fargo. The consent judgment did not refer to or incorporate by reference the settlement agreement.

On December 18, 2020, NeuroRestorative and Huelsing appeared via Webex with the probate division to discuss the settlement agreement and consent judgment, to which Huelsing raised no objections. On February 16, 2021, NeuroRestorative moved to approve the settlement agreement and consent judgment. On May 24, 2021, Wells Fargo filed objections to NeuroRestorative's motion to approve the settlement agreement and consent judgment. NeuroRestorative responded Wells Fargo lacked standing to object to Huelsing's liability admissions and took no issue with the settlement terms, which did not provide Huelsing with any unreasonable advantage over the Estate.

The probate division held an in-person hearing on May 28, 2021, with NeuroRestorative, Wells Fargo, and Huelsing, who appeared *pro se*.[2] The probate division approved the settlement agreement and consent judgment while the parties were present and signed the consent judgment NeuroRestorative provided.

*Motion to Enforce the Settlement Agreement/*
*Motion to Set Aside the Consent Judgment*

After the hearing, NeuroRestorative approached Huelsing about executing an assignment of claims in all of her capacities against Wells Fargo under the cooperation clause. NeuroRestorative's counsel sent Huelsing a letter in June 2021, stating, "As I explained, the Assignment will allow NeuroRestorative to pursue the claim against Wells Fargo without the need

---

[2] There is no transcript from this hearing provided in the record on appeal. The facts adduced are from Huelsing's testimony at a later hearing, for which a transcript was provided to this Court, affirming her participation and testimony from this hearing.

5

for you to hire counsel to do so." Huelsing did not respond to the request, but instead, hired counsel at Wells Fargo's behest. Huelsing's attorney stated Huelsing intended to rescind the settlement agreement due to NeuroRestorative's affirmative misrepresentations made during the discussions leading to Huelsing's signing. Huelsing's attorney specifically noted NeuroRestorative's failure to notify Huelsing other documents signed during Ashlee's admission did not provide for her personal liability because Huelsing only signed the documents in her capacity as Ashlee's guardian.

In May 2022, NeuroRestorative moved to enforce the settlement agreement, alleging Huelsing breached the cooperation clause. On June 9, 2022, Huelsing moved to set aside the consent judgment and requested a hearing on the settlement agreement terms to determine whether she knowingly and voluntarily entered into the agreement. Huelsing alleged she did not understand the legal implications of certain terms, including her lack of personal liability under the admission documents. Wells Fargo also moved to set aside the consent judgment and incorporated Huelsing's motion. Wells Fargo argued Huelsing did not breach the cooperation clause because she was not required to assign any claim to NeuroRestorative.

NeuroRestorative responded Huelsing's motion to set aside was untimely under Rule 74.06 because it was filed more than a year after the consent judgment was entered.[3] To the extent Huelsing's motion was timely, NeuroRestorative claimed it asserted a mistake of law, which failed to state a claim for relief under Rule 74.06(b).[4] NeuroRestorative also argued Wells Fargo lacked standing to request any relief regarding the settlement agreement because it was not a party to the

---

[3] All rule references are to Mo. Sup. Ct. R. (2020), unless otherwise indicated.

[4] To the extent the parties rely on Rule 74, in probate proceedings "[t]he provisions of Rule 74 are not applicable," "unless the judge of the probate division orders that it shall be applicable in a particular matter." *In Estate of Downs*, 400 S.W.3d 360, 361 (Mo. App. W.D. 2013); Rule 41.01(b). There is no indication the probate division judge ordered Rule 74 applicable in this matter.

agreement. Wells Fargo and Huelsing responded the consent judgment was not a final appealable judgment because Wells Fargo remained a party with claims not disposed of when entered. Wells Fargo further claimed Huelsing was intimidated and coerced into executing the settlement agreement while she was unrepresented by counsel.

The probate division held a hearing on these motions at which Huelsing testified. The parties filed post-hearing motions at the probate division's request, but no party requested findings of fact or conclusions of law. The probate division entered its order and judgment overruling NeuroRestorative's motion to enforce the settlement and sustaining Respondents' motion to set aside the consent judgment.

NeuroRestorative appeals. Huelsing moved to dismiss the appeal for lack of a final, appealable judgment, which was taken with the case.

**Motion to Dismiss Appeal**

"Before addressing the merits of this appeal, 'this Court has a duty to determine whether it has jurisdiction.'" *Jefferson Cnty. 9-1-1 Dispatch v. Plaggenberg*, 645 S.W.3d 473, 475 (Mo. banc 2022) (quoting *Wilson v. City of St. Louis*, 600 S.W.3d 763, 765 (Mo. banc 2020)). Huelsing moved to dismiss NeuroRestorative's appeal arguing the probate division's judgment setting aside the consent judgment did not fully dispose of all issues and rights of all parties, and thus, is not a final, appealable judgment. Huelsing further argues the right to seek an appeal under section 472.160 requires NeuroRestorative to demonstrate it is an aggrieved party, which it is not.[5] NeuroRestorative contends the judgment is appealable under the exceptions in section 472.160 allowing an immediate appeal.

---

[5] All statutory references are to RSMo (2016), unless otherwise indicated.

This appeal comes to this Court from the probate division. "The right to appeal from a probate court's judgment is purely statutory." *In re Estate of Burg*, 68 S.W.3d 543, 544 (Mo. App. E.D. 2001). "[W]here a statute does not give a right to appeal, no right exists." *Plaggenberg*, 645 S.W.3d at 475 (quoting *Wilson*, 600 S.W.3d at 765). "Generally, orders of the probate court are interlocutory and are not subject to appeal until final disposition of the matters before the court." *In Matter of Smith*, 550 S.W.3d 541, 546–47 (Mo. App. E.D. 2018). "[I]f an order falls within the enumerated exceptions set forth in Section 472.160.1, it is deemed final for purposes of appeal, and any interested and aggrieved person has the right to appeal." *Id.* Section 472.160 is "liberally construed to favor the right to appeal." *Estate of Sturmfels v. Frederick*, 261 S.W.3d 559, 562 (Mo. App. E.D. 2008). "Such expedited appeals serve the salutary purpose of allowing many matters of importance to be resolved while the estate is open, and prevents one complex appeal from all matters that occurred during the administration of the estate." *Wahlgren v. Wahlgren*, 446 S.W.3d 695, 698 (Mo. App. W.D. 2014) (quoting *In re Estate of Ginn*, 323 S.W.3d 860, 863 (Mo. App. W.D. 2010)).

Section 472.160.1 provides:

1. Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court in any of the following cases:
    (1) On the allowance of any claim against an estate exceeding one hundred dollars;
    (2) On all settlements of the personal representative;
    (3) On all apportionments among creditors, legatees or distributees;
    (4) On all orders directing the payment of legacies, making distribution or making allowances to the surviving spouse or unmarried minor children;
    (5) On all orders for the sale of assets of the probate estate;
    (6) On all orders for the sale of real estate;
    (7) On judgments for waste;
    (8) On proceedings to recover balances escheated to the state;
    (9) On all orders revoking letters testamentary or of administration;
    (10) On orders making allowances for the expenses of administration;
    (11) On orders for the specific execution of contracts;

(12) On orders compelling legatees and distributees to refund;

(13) On all orders denying any of the foregoing requested actions;

(14) In all other cases where there is a final order or judgment of the probate division of the circuit court under this code except orders admitting to or rejecting wills from probate.

NeuroRestorative argues the judgment is appealable under subdivisions (1), (2), (11), and (13) of section 472.160.1.

First, NeuroRestorative contends under subdivisions (1), (2), and (13), the judgment is immediately appealable because Huelsing was sued "in her capacity as the guardian and conservator" for Ashlee, and "she entered into the [s]ettlement [a]greement and agreed to the [c]onsent [judgment] in those capacities, both of which allowed NeuroRestorative's [c]laim (exceeding one hundred dollars) against the Estate of Ashlee." NeuroRestorative argues section 475.020 states "chapter 472 applies equally to guardianships and conservatorships" and the term "personal representative," as it appears in sections 475.010 to 475.370, "should read 'guardian,' 'conservator' and the like, as the case may be, as far as applicable to guardianships and conservatorships." NeuroRestorative thus alleges "[b]y analogy, subsection 472.160(1), (2)" should read, in the case of guardianships, "any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division of the circuit court on all settlements of the guardian or conservator." This Court will address section 472.160.1(1) and (2) separately.

Subdivisions (2) and (13) allow an immediate appeal "[o]n all settlements of the personal representative" and "[o]n all orders denying any of the foregoing requested actions." Section 475.020 provides:

The provisions of chapter 472, unless therein restricted to decedents' estates, apply to guardianships and conservatorships. Where sections in chapter 473 are specifically incorporated by reference by any provision of sections 475.010 to

9

475.370, they shall be applied as if "decedent" or "deceased" read "ward" or "protectee", "executor" or "administrator" or "personal representative" read "guardian", "conservator" and the like, as the case may be, as far as applicable to guardianships and conservatorships and not inconsistent with the provisions of sections 475.010 to 475.370. . . .

"[I]f the language of a statute is plain and unambiguous, this Court is bound to apply that language as written and may not resort to canons of construction to arrive at a different result." *State ex rel. Bailey v. Fulton*, 659 S.W.3d 909, 912 (Mo. banc 2023) (quoting *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 605 (Mo. banc 2019)). The first sentence of section 475.020 clearly applies to chapter 472, while the second sentence clearly applies to chapter 473. Accordingly, section 475.020 provides the provisions of chapter 472 shall apply to guardianships and conservatorships but does not provide for "personal representative" to be read as "guardian" or "conservator" as it does when applying chapter 475 to chapter 473. This Court "may not resort to canons of construction to arrive at a different result." *Fulton*, 659 S.W.3d at 912 (quoting *Beger*, 566 S.W.3d at 605). We decline to replace "personal representative" in subdivision (2) with guardian or conservator. *See id.* Thus, because Huelsing is not a personal representative, subdivision (2) read with subdivision (13) does not apply and does not provide a basis for appeal.

Subdivision (1) and (13) permit an immediate appeal "[o]n the allowance of any claim against an estate exceeding one hundred dollars" and "[o]n all orders denying any of the foregoing requested actions." The probate division's judgment did not deny the allowance of the claim against the Estate; rather, it revived NeuroRestorative's original verified claim against the Estate. *See* 49 C.J.S. Judgments § 513 ("A consent judgment, if vacated, should be set aside in its entirety; and, the effect of setting aside a consent judgment is to reinstate the former case."). Thus, subdivision (1) read with subdivision (13) does not apply and does not provide a basis for appeal.

Second, NeuroRestorative contends under subdivisions (11) and (13) the judgment is subject to an immediate appeal because the probate division's judgment set aside the consent judgment and "thereby denied the specific execution of the [s]ettlement [a]greement." NeuroRestorative's argument is imprecise. The probate division's judgment set aside the consent judgment, resulting in its vacation. The probate division's judgment separately overruled NeuroRestorative's motion to enforce the settlement agreement, which denied the specific execution of the settlement agreement. On appeal, in its points relied on, NeuroRestorative solely argues the probate division erred in setting aside the consent judgment. NeuroRestorative does not appeal the denial of the specific execution of the settlement agreement.[6] Thus, subdivision (11) read with subdivision (13) does not apply and does not provide a basis for appeal.

NeuroRestorative's argument its appeal should not be dismissed still fails even if subdivisions (11) and (13) applied because the probate division's judgment is not appealable as it does not fully dispose of all issues or fully adjudicate the rights of the parties. "Although section 472.160 makes some interlocutory probate orders appealable, 'it is well established that as to any specific proceeding, the rights of the parties must be fully adjudicated and all issues fully disposed of, or the order is not appealable.'" *Wahlgren*, 446 S.W.3d at 698 (quoting *Ginn*, 323 S.W.3d at 863); *see also Matter of Estate of Comia*, 657 S.W.2d 63, 64 (Mo. App. E.D. 1983). In other words, distinct from 472.160.1(14), even if the order or judgment falls within one of the section 472.160.1 exceptions, "the rights of the parties must be fully adjudicated and all issues fully disposed of, or the order is not appealable." *Wahlgren*, 446 S.W.3d at 698 (quoting *Ginn*, 323 S.W.3d at 863); *see also Comia*, 657 S.W.2d at 64.

---

[6] At oral argument, NeuroRestorative agreed the probate division's order and judgment overruling their motion to enforce the settlement agreement was not appealed.

For example, in *Wahlgren* three trust beneficiaries, R.W., P.R., and M.H., disputed the division and distribution of trust assets. 446 S.W.3d at 696–97. R.W., in her capacity as the initial successor trustee, sought declaratory judgment against P.R. and M.H., and herself in her capacity as a beneficiary. *Id.* at 697. "The petition sought instruction on how to reconcile two provisions of the [t]rust regarding distribution of [t]rust assets and on whether two annuities were to be considered property of the [t]rust." *Id.* P.R. and M.H. filed counterclaims and cross claims against R.W. in her capacity as initial successor trustee and as a beneficiary involving "requests for an accounting, allegations of misconduct, and an attempt to exclude [R.W.] from participation as a beneficiary of the [t]rust." *Id.* Following other motions, P.R. and M.H. moved for proposal of distribution by trustee. *Id.* The circuit court sustained the motion and directed the newly appointed successor trustee to present a proposal for distribution of the trust estate. *Id.* The successor trustee issued a proposed distribution plan, to which the parties objected. *Id.* Following a hearing, the circuit court entered judgment overruling the parties' objections and directing the successor trustee to distribute the funds under the proposed plan. P.R. and M.H. appealed. *Id.* R.W. moved to dismiss the appeal arguing "because other issues in the case remained pending, the judgment on [the proposed distribution plan] was not final or appealable." *Id.* at 697–98.

The Western District noted subdivisions (3) and (13) of section 472.160.1 allow an appeal "[o]n all apportionments among creditors, legatees or distributees," and "[o]n all orders denying any of the foregoing requested actions[.]" *Id.* at 698. But, the court reasoned "[w]hile the judgment directing [s]uccessor [t]rustee to distribute the [t]rust assets as proposed involve[d] apportionment of trust assets among distributees, the judgment [did] not fully adjudicate the rights of the parties regarding the trust property or dispose of the issue." *Id.* The court noted R.W.'s declaratory judgment action and P.R. and M.H.'s counterclaims and cross claims remained pending, which

"involved requests for an accounting, allegations of misconduct, and an attempt to exclude [R.W.] from participation as a beneficiary of the [t]rust." *Id.* The court held, "[r]esolution of these claims [would] ultimately affect the distribution of trust assets; therefore, the issue ha[d] not been fully adjudicated," the judgment was not appealable, and the appeal was dismissed. *Id.*

Here, subdivisions (11) and (13) of section 472.160.1 state an aggrieved party may appeal an order, judgment, or decree of the probate division "[o]n orders for the specific execution of contracts" and "[o]n all orders denying any of the foregoing requested actions . . . ." While the probate division's judgment setting aside the consent judgment effectively involves the denial of the specific execution of a contract, i.e., the consent judgment, the judgment does not fully adjudicate the rights of the parties regarding the claim against the Estate, against Huelsing, against Wells Fargo, or dispose of the issues. *Wahlgren*, 446 S.W.3d at 698. Instead, the probate division's judgment reinstates the claims between NeuroRestorative, Huelsing in all of her capacities, and the Estate, while the claims against Wells Fargo were also left pending. *See* 49 C.J.S. Judgments § 513 ("A consent judgment, if vacated, should be set aside in its entirety; and, the effect of setting aside a consent judgment is to reinstate the former case."). Resolution of these claims will ultimately affect the claims against the Estate, Huelsing's liability and status as Ashlee's guardian and conservator, and Wells Fargo's liability; therefore, none of the issues have been fully adjudicated. *Wahlgren*, 446 S.W.3d at 698; *see also Comia*, 657 S.W.2d at 64 (order finding that child of decedent may be entitled to statutory allowance of support, which was governed by section 472.160.1(4) and (14), was not appealable when the order indicated the court intended to limit her support but the amount of the award was not yet determined and, so, the issue was not fully adjudicated).

Thus, the probate division's judgment is not appealable, and this Court lacks the authority to review the case. *See Wahlgren*, 446 S.W.3d at 698. Because the judgment is not appealable, we need not reach the issue of whether NeuroRestorative is an aggrieved party under section 472.160.1. Huelsing's motion to dismiss NeuroRestorative's appeal is sustained.

The appeal is dismissed.

## Conclusion

NeuroRestorative's appeal is dismissed.

_____

Philip M. Hess, Judge

Robert M. Clayton III, P.J. and
Cristian M. Stevens, J. concur.