

# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF D.E.G.,      )      *Opinion issued June 16, 2020*
     )
         Appellant,      )
     )
v.      )      No. SC97869
     )
JUVENILE OFFICER OF      )
JACKSON COUNTY,      )
     )
         Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable J. Dale Youngs, Judge

D.E.G. challenges the juvenile division's judgment dismissing its jurisdiction over him and allowing his case to be transferred to a court of general jurisdiction following a section 211.071[1] hearing. D.E.G. seeks to appeal directly from the juvenile division's judgment and challenges the constitutional validity of his section 211.071 hearing.

This Court holds a juvenile has the statutory right to appeal from any final juvenile division judgment. Accordingly, the case is retransferred to the court of appeals, Western District, for a determination of the merits of D.E.G.'s claims.

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

**Factual and Procedural Background**

In April 2018, the Juvenile Officer of Jackson County, Lori L. Stipp, filed a petition alleging D.E.G. required care and treatment due to his alleged conduct that would have been a crime had he been an adult. The Juvenile Officer requested a section 211.071 hearing to dismiss D.E.G. from the juvenile division's jurisdiction. The Juvenile Officer's certification report recommended D.E.G. be certified to stand trial in a court of general jurisdiction.

Following the certification hearing, the juvenile division entered its judgment of dismissal pursuant to section 211.071 that dismissed the juvenile petition and transferred jurisdiction over D.E.G. to a court of general jurisdiction. D.E.G. was released and discharged from the juvenile division. The state never filed charges against D.E.G.

In October 2018, the Juvenile Officer filed another petition alleging D.E.G. required care and treatment because he committed conduct that, had he been an adult, would have constituted first-degree assault and armed criminal action. On October 29, 2018, the Juvenile Officer filed a motion for a certification hearing pursuant to section 211.071. The Juvenile Officer's certification report recommended D.E.G. be certified to stand trial in a court of general jurisdiction. The certification hearing was scheduled for January 2, 2019.

On January 2, 2019, D.E.G. filed a motion to deny certification, challenging the constitutional validity of Missouri's certification process. D.E.G.'s motion was overruled; the certification hearing proceeded.

2

The only testimony at the certification hearing was provided by the Deputy Juvenile Officer Sandy Rollo-Hawkins (hereinafter, "Rollo-Hawkins"). Rollo-Hawkins' testimony consisted of a summary of secondary resources she compiled to generate the certification report recommendation. D.E.G. objected to Rollo-Hawkins' testimony regarding the report because she had no personal knowledge of the information it contained, it constituted hearsay, and it violated his constitutional right to confrontation. Rollo-Hawkins' summary included details of the alleged conduct in the petition, details of prior unadjudicated referrals to the juvenile office, details of D.E.G.'s conduct in detention, statements made by D.E.G.'s mother, details of D.E.G.'s medical and mental health, and D.E.G.'s educational background. Rollo-Hawkins conceded she had no personal knowledge of any information contained in her report but merely compiled and reviewed other sources for the certification report.

Following the hearing, the juvenile division entered its judgment of dismissal pursuant to section 211.071 that dismissed the juvenile petition and transferred jurisdiction over D.E.G. to a court of general jurisdiction. D.E.G. was released and discharged from the juvenile division.

D.E.G. appealed the juvenile division's dismissal judgment to the court of appeals. This Court granted transfer prior to opinion. Mo. Const. art. V, sec. 10.

**Appealability**

D.E.G. raises six points on appeal, challenging the constitutional validity of his certification hearing. However, prior to addressing any constitutional challenge D.E.G.

3

presents, this Court must determine whether this appeal properly is before it.[2] D.E.G.

requests this Court review the appeals process established by *In re T.J.H.*, 479 S.W.2d

---

[2] Judge Fischer's dissenting opinion seeks to resolve all of the issues D.E.G. presented. However, the issues − other than whether certification was final for appeal − are not issues this Court must address at this time.

"Even though a jurisdictional allegation may be proper on its face, this Court will not entertain the appeal if the allegation is pretextual." *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 51 (Mo. banc 1999). "If the United States Supreme Court or Missouri Supreme Court has addressed a constitutional challenge, the claim is merely colorable and the intermediate appellate court has jurisdiction." *State v. Henry*, 568 S.W.3d 464, 479 (Mo. App. E.D. 2019).

D.E.G.'s constitutional challenges are all colorable rather than real and substantial. His due process claims concern the quality and the weight of evidence presented in the hearing. The due process considerations in a section 211.071 proceeding have been addressed by *Kent v. United States*, 383 U.S. 541, 562, 86 S. Ct. 1045, 16 L.Ed.2d 84 (1966), and *State v. Nathan*, 404 S.W.3d 253, 260 (Mo. banc 2013). D.E.G.'s equal protection claims may also be addressed by the court of appeals prior to any potential necessary resolution by this Court. *See Johnson v. State*, 366 S.W.3d 11, 27 (Mo. banc 2012) (addressing equal protection from racial gerrymandering in an opinion after transfer from the court of appeals); *Thompson v. ICI Am. Holding*, 347 S.W.3d 624, 635-36 (Mo. App. W.D. 2011) (addressing equal protection claims of disparate treatment of employers and employees); *Tenenbaum v. Mo. State Comm. of Psychologists*, 226 S.W.3d 922, 923 (Mo. App. W.D. 2007) (discussing equal protection claims of disparate discipline in professional licensing). Similarly, separation of powers claims have been addressed by the court of appeals, and D.E.G. could receive the relief he seeks from that court. *See Barrett v. Greitens*, 542 S.W.3d 370, 379-80 (Mo. App. W.D. 2017) (finding the governor's withholding of expenditures to the public defender did not violate separation of powers); *Pepper v. St. Charles Cty., Mo.*, 517 S.W.3d 590, 601-02 (Mo. App. E.D. 2017) (discussing whether a charter amendment invaded the province of the judiciary); *Mitchell v. Nixon*, 351 S.W.3d 676, 679 (Mo. App. W.D. 2011) (addressing separation of powers issues in determining whether an administrative agency usurped the judiciary's role); *State v. Woodworth*, 941 S.W.2d 679, 697 (Mo. App. W.D. 1997) (finding a party failed to develop his argument to support the contention "that because the juvenile officer is appointed by the juvenile division judge, the certification procedure creates a direct conflict of interest and violates the separation of powers").

433 (Mo. banc 1972). The Juvenile Officer asserts the juvenile division no longer has jurisdiction over D.E.G.'s proceedings and requests this appeal be dismissed.[3]

"Under article V, section 5, it is for the legislature to set the requirements for the right to appeal." *Goldsby v. Lombardi*, 559 S.W.3d 878, 883 (Mo. banc 2018). "The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (quoting *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 859 (Mo. banc 2008)). Section 211.261 currently governs the right to appeal in juvenile cases.[4] However, because the right to appeal in a juvenile case is defined by statute and the statute conferring that right has been amended since *T.J.H.* was decided, this Court must revisit whether a dismissal from juvenile division is appealable.

Statutory interpretation is an issue of law, which is subject to *de novo* review. *Henry v. Piatchek*, 578 S.W.3d 374, 378 (Mo. banc 2019). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *State ex rel. Robison v. Lindley-Myers*, 551 S.W.3d 468, 472 (Mo. banc 2018) (quoting *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "In construing a statute, the Court must presume the legislature was aware of the state of the law at the time of its enactment." *Suffian v. Usher*, 19 S.W.3d 130, 133 (Mo. banc 2000) (quoting *In re Nocita*, 914 S.W.2d 358, 359 (Mo.

---

[3] The Juvenile Officer also filed a separate motion to dismiss with this Court. The motion to dismiss is overruled because the underlying motion to dismiss D.E.G. from the juvenile division's jurisdiction is appealable.

[4] Rule 120.01(a) provides: "An appeal shall be allowed as provided by statute."

banc 1996)). Accordingly, when the legislature amends a statute, we presume the legislature intended to change the existing law. *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2019).

In 1972, this Court was tasked with determining whether an order from the juvenile division terminating proceedings and transferring jurisdiction of a child to a court of general jurisdiction pursuant to section 211.071, RSMo Supp. 1957, was "a final order from which an appeal shall be allowed." *T.J.H.*, 479 S.W.2d at 434. This Court incorrectly quoted both sections 211.071 and 211.261.[5] *Id*. However, there was never any discussion, analysis, or examination of the statutory language at issue.

This Court determined an order dismissing a petition and relinquishing juvenile division jurisdiction was not a final, appealable order. *Id*. This Court proffered two reasons for its decision, based upon precedent and policy concerns expressed by other jurisdictions: (1) to allow an appeal would delay criminal prosecution; and (2) a juvenile division's waiver of jurisdiction could be challenged by filing a motion to dismiss an indictment in a court of general jurisdiction. *Id*. at 434-35.[6] This Court, noting Missouri

---

[5] The legislature enacted section 211.261 in 1957, and modified it in 1994. The Court in *T.J.H.* cited section 211.261, RSMo Supp. 1969. However, the Court incorrectly quoted from section 211.261, as there is no reference to the appealability from only specific sections of chapter 211.

[6] Judge Powell's dissenting opinion asserts the resolution of this case demonstrates how a criminal case in the circuit court can be delayed due to appealing a judgment dismissing a juvenile from the jurisdiction of the juvenile division. While the goal should be a just, speedy resolution of any case in the judicial system, those concerns extend beyond the issues in this case and are subservient to the vested interest all juveniles have in remaining under the jurisdiction of the juvenile division rather than pursuing remedies in a court of general jurisdiction. The purpose of the juvenile code "is to protect and safeguard the best interests of the juvenile." *State v. Salmon*, 563 S.W.3d 725, 732 (Mo.

6

permits the filing of a motion to dismiss an indictment after the case is filed in a court of general jurisdiction pursuant to Rule 25.06,[7] summarily dismissed the juvenile's appeal without any recognition or discussion of the statutory right to appeal. *Id.* at 435.

Since *T.J.H.*, Missouri courts consistently have held that once the juvenile division dismisses a case and transfers the cause to a court of general jurisdiction, there is no final judgment for purposes of appeal. *See, e.g., State v. Thomas*, 970 S.W.2d 425 (Mo. App. W.D. 1998); *State v. K.J.*, 97 S.W.3d 543, 546 (Mo. App. E.D. 2003). *T.J.H.* continued to be cited as valid precedent without any additional research or commentary regarding the actual statutory language at issue.

In 1994, the Missouri legislature amended section 211.261. Section 211.261.1 provides, "An appeal shall be allowed to the child from *any final judgment, order or decree made under the provisions of this chapter* and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend." (Emphasis added). Further, the legislature added language in section 211.261.1 allowing "the juvenile officer [to appeal] from any final judgment, order or decree made under this chapter, except that no such appeal shall be allowed concerning a final determination

---

App. E.D. 2018). This is demonstrated by the confidentiality of juvenile records. Should a juvenile wrongly be dismissed from the jurisdiction of the juvenile division and have to pursue a remedy in the court of general jurisdiction, that juvenile's records no longer are confidential, thereby thwarting the protections and safeguards designed to ensure the best interests of all our juveniles.

[7] At the time *T.J.H.* was decided, Rule 25.06 (1972) pertained to the scope and form of motions and waiver of defenses. Such language now appears in Rule 24.04.

pursuant to subdivision (3) of subsection 1 of section 211.031."[8]  The legislature also included two additional subsections to this statute that allow the juvenile officer to seek an interlocutory appeal from proceedings pursuant to section 211.031.1(3), notwithstanding the prior provision, and from orders suppressing evidence, a confession, or an admission.

In this case, the juvenile division entered a "Judgment of Dismissal pursuant to section 211.071" on January 9, 2019.  In its judgment, the juvenile division set forth detailed reasoning to dismiss D.E.G. from its jurisdiction.[9]  The juvenile division concluded it was "ordered and adjudged" D.E.G was released and discharged from its jurisdiction.  Finally, the judgment was signed by the judge.[10]  Hence, the judgment dismissing the juvenile division's jurisdiction over D.E.G. was a final, appealable judgment.  *See* Rule 74.01(a); *c.f. In re M.P.W.*, 983 S.W.2d 593, 597-98 (Mo. App. W.D. 1999) (finding the decision by the juvenile division to assume jurisdiction is an appealable judgment).

---

[8] "Section 211.031 gives exclusive original jurisdiction to the juvenile justice system over all children under the age of 17." *State v. Andrews*, 329 S.W.3d 369, 371 (Mo. banc 2010).

[9] The primary purpose of the juvenile division "is to facilitate the care, protection and discipline of children who come within [its] jurisdiction …."  Section 211.011.

[10] Following the judge's signature, the judgment had another heading titled, "Notice of Entry of Judgment."  This section informed the parties "you may have a right to appeal from this judgment under Rule 120.01 and section 211.261…" and it was signed by the deputy court administrator.

**_T.J.H._'s Validity**

This Court's decisions "should not be lightly overruled." *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003). "*Stare decisis* 'promotes stability in the law by encouraging courts to adhere to precedents.'" *State v. Blurton*, 484 S.W.3d 758, 792 (Mo. banc 2016) (Draper, J., concurring in result) (quoting *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013)).

> Adherence to precedent is especially vital … with respect to prior cases interpreting statutes.   Justice Louis Brandeis said it well in 1932:
> Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right.   This is commonly true even when the error is a matter of serious concern, provided correction can be had by legislation.

*Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 387 (Mo. banc 2014) (Fischer, J., dissenting) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406-10, 52 S. Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting) (internal citations omitted), *overruled in part by Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 387, 58 S. Ct. 623, 82 L.Ed. 907 (1938)).

However, absolute devotion to precedent is not unrestricted. *Templemire*, 433 S.W.3d at 379. "[T]he passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 (Mo. banc 2005). "The rule of *stare decisis* is never applied to prevent the repudiation of decisions that are patently

wrong and destructive of substantive rights." *O'Leary v. Ill. Terminal R.R. Co.*, 299 S.W.2d 873, 879 (Mo. banc 1957).[11]

A judgment dismissing a juvenile from the juvenile division's jurisdiction is final and appealable. In *T.J.H.*, this Court relied on misquoted statutory language and misguided concerns voiced in other jurisdictions that led our Court to erroneously determine the only manner in which a judgment dismissing a juvenile from the juvenile division's jurisdiction could be challenged was in a court of general jurisdiction. *T.J.H.*, 479 S.W.2d at 434-35. The right to appeal in Missouri is a statutory right. This Court looks to Missouri statutes to determine when a party has the right to appeal rather than policy concerns voiced by other jurisdictions. *T.J.H.* ignored the fundamental constitutional obligation to follow statutory guidance provided by the legislature.

---

[11] Rather than engaging in a meaningful analysis of the law, Judge Powell's dissenting opinion argues this Court should perpetuate its erroneous precedent. Judge Powell's dissenting opinion cites *First Bank v. Fischer & Frichtel, Inc.,* 364 S.W.3d 216, 224 (Mo. banc 2012), for the proposition that *stare decisis* should not overrule precedent when a decision has remained unchanged for many years. However, in *First Bank*, the subject at issue was not addressed by any statute; accordingly, there could be no statutory analysis. *Id*. Judge Powell's dissenting opinion further cites *Crabtree v. Bugby,* 967 S.W.2d 66, 71-72 (Mo. banc 1998), explaining this Court should not disturb its precedent for a mere disagreement with prior statutory analysis. While *Bugby* is no longer good law, *see Templemire*, 433 S.W.3d at 373, this concern is valid. However, the *T.J.H.* Court failed to engage in *any* statutory analysis to support its decision, even though the right to appeal is defined statutorily. The notion that the primary importance is for the law to be settled rather than correct

> would result in a society in which insidious discrimination still would subject school children to being segregated into schools that were purportedly separate but equal, women could not serve on juries, interracial marriage still would be subject to criminal prosecution, and crime victims would be prohibited from offering impact testimony during the punishment phase of death penalty trials.

*Id.* at 380 n.9.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys.*, 533 S.W.3d 720, 723 (Mo. banc 2017) (quoting *Parktown Imps.*, 278 S.W.3d at 672). "This Court interprets statutes in a way that is not hyper-technical but, instead, is reasonable, logical, and gives meaning to the statute and the legislature's intent as reflected in the statute's plain language." *St. Louis Rams LLC v. Dir. of Revenue*, 526 S.W.3d 124, 126 (Mo. banc 2017). "The rules of statutory interpretation are not intended to be applied haphazardly or indiscriminately to achieve a desired result. Instead, the canons of statutory interpretation are considerations made in a genuine effort to determine what the legislature intended." *Parktown Imps.*, 278 S.W.3d at 672.

This Court must look to the *actual* statutory provisions and determine whether D.E.G. has the right to appeal from the juvenile divisions's dismissal.[12] Section 211.261.1's plain language is clear and unambiguous. Section 211.261.1 allows for an appeal from "*any* final judgment, order or decree made under the provisions of this chapter …." (Emphasis added). Therefore, there is no need for this Court, or any other, to engage in a policy discussion or analysis of other jurisdictions in order to effectuate the

---

[12] Judge Powell's dissenting opinion claims this principal opinion rests upon a reexamination of section 211.261 due to the amendment made in 1994. That assertion is clearly incorrect. This opinion examines section 211.261 in the first instance because *T.J.H.* never engaged in any statutory analysis of the proper statutory language at issue.

legislature's intent.  D.E.G. has the right to appeal from the juvenile division's judgment dismissing him from its jurisdiction.[13]

Further, because *T.J.H.* and its progeny failed to follow section 211.261's plain language, *T.J.H.* and all other cases holding a juvenile's dismissal from a juvenile division's jurisdiction may be challenged only in a court of general jurisdiction are overruled and should no longer be followed.[14]  As provided by section 211.261, an aggrieved party may appeal from any final judgment in chapter 211.

## Conclusion

A juvenile may appeal from a final judgment in the juvenile division, including the juvenile division's decision to dismiss a case from its jurisdiction following a section 211.071 hearing.  Accordingly, this Court overrules *T.J.H.*'s contrary holding and any other case not allowing a juvenile to appeal directly following a judgment dismissing the juvenile from the juvenile division's jurisdiction after a section 211.071 hearing.  The

---

[13] Judge Powell's dissenting opinion prefers to rely upon policy statements from another court made almost a half-century ago rather than the plain statutory language.  Judge Powell's dissenting opinion seems to believe that allowing the determination as to whether a juvenile is certified properly may be resolved promptly in a criminal case in a court of general jurisdiction.  However, as this case demonstrates, D.E.G.'s concurrent criminal case in a court of general jurisdiction still is pending and illustrates merely allowing a case to proceed to the court of general jurisdiction does not ensure its prompt resolution.  Further, once a juvenile is subject to the court of general jurisdiction, the juvenile loses all protections put in place to protect our young citizens, including the juvenile's anonymity.

[14] Conspicuously absent from Judge Powell's dissenting opinion is any sort of disagreement about the plain language of the statutory right to appeal.  Judge Powell's dissenting opinion would ignore the legislature's role in determining when a party may appeal, which is inappropriate.

case is retransferred to the Missouri Court of Appeals, Western District, for its review of

the underlying merits of the juvenile division's judgment.[15]

_____

GEORGE W. DRAPER III, CHIEF JUSTICE


Russell, Breckenridge and Stith, JJ., concur;  Powell, J., dissents in separate opinion filed; Wilson and Fischer, JJ., concur in opinion of Powell, J.; Fischer, J., dissents in separate opinion filed; Wilson and Powell, JJ., concur in opinion of Fischer, J.

---

[15] When this Court is called upon to determine the finality or appealability of judgments, it has made that determination and then regularly retransferred to the court of appeals for a determination of the underlying merits. *See Meadowfresh Solutions USA, LLC v. Maple Grove Farms*, LLC, 578 S.W.3d 758, 762 (Mo. banc 2019) (determining an interlocutory order was final for purposes of appeal and retransferring to the court of appeals for resolution of the remaining points on appeal); *Barron v. Shelter Mut. Ins. Co.*, 220 S.W.3d 746, 747 (Mo. banc 2007) (following the court of appeals' determinations that the underlying petition failed to state a claim, this Court transferred the case, determined the petition did state a claim, and retransferred to the court of appeals for resolution of the issues on appeal); *Brooks v. Brooks*, 98 S.W.3d 530, 531 (Mo. banc 2003) (following this Court's grant of transfer from the court of appeals, this Court determined a qualified domestic relations order was appealable and retransferred for the court of appeals to consider the merits); *Williams v. Williams*, 41 S.W.3d 877, 878 (Mo. banc 2001) (retransferring to the court of appeals for a determination on the merits after the court of appeals transferred the case to this Court due to a conflict between the districts); *Paulson v. Dir. of Revenue*, 724 S.W.2d 511, 513 (Mo. banc 1987) (granting transfer due to confusion of the requirements for a final judgment and retransferring to the court of appeals for a determination on the merits).



# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF D.E.G.,     )
    )
       Appellant,     )
    )
v.     )    No. SC97869
    )
JUVENILE OFFICER OF     )
JACKSON COUNTY,     )
    )
       Respondent.     )

### DISSENTING OPINION

I respectfully dissent. Under this Court's precedent, a juvenile certification ruling is not appealable. Therefore, I would dismiss this appeal.

As the principal opinion notes, "In Missouri, the right to appeal is purely statutory, and 'where a statute does not give a right to appeal, no right exists.'" *Fannie Mae v. Truong*, 361 S.W.3d 400, 403 (Mo. banc 2012) (quoting *Farinella v. Croft*, 922 S.W.2d 755, 756 (Mo. banc 1996)). In this juvenile matter, the right to appeal is governed by section 211.261.[1] This section provides in relevant part: "An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend." § 211.261.1. This Court, in *In re T.J.H.*, 479 S.W.2d 433, 434 (Mo. banc 1972), interpreted this statutory language and determined a juvenile certification resulting in the dismissal of a petition in the juvenile division is not a final judgment, order, or decree from which an appeal is authorized.

The principal opinion justifies reexamining this Court's decision in *T.J.H.* by the legislative amendments made to section 211.261 in 1994. Ordinarily, this Court presumes the legislature intends to change the law when it amends a statute. *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2019). However, "this is not always the case." *Id.* If a statute is amended only in part, this Court presumes the legislature intended the unchanged section of the statute continues to operate as it did before the amendment. *Citizens Bank & Trust Co. v. Dir. of Revenue*, 639 S.W.2d 833, 835 (Mo. 1982) (citing *State ex re. Dean v. Daues*, 14 S.W.2d 990, 1002 (Mo. 1929)). "[T]he General Assembly must be presumed to have accepted the judicial and administrative construction of its enactments . . . ." *State ex rel. Howard Elec. Co-Op v. Riney*, 490 S.W.2d 1, 9 (Mo. 1973); *see also State v. Grubb*, 120 S.W.3d 737, 742 (Mo. banc 2003) (Teitelman, J., dissenting) (stating the General Assembly is presumed to know the law in enacting statutes and it had implicitly adopted a prior court of appeals decision by amending the law but not overruling the case).

Section 211.261 was amended in 1994, after this Court decided *T.J.H.* Before the amendments, the statute provided:

2

An appeal shall be allowed to the child **from any final judgment, order or decree** made under the provisions of sections 211.011 to 211.431 and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend.

§ 211.261, RSMo Supp. 1957 (emphasis added).  After the legislative amendments in 1994, this statutory provision remained largely unchanged.  The amendments maintained the language that an appeal is allowed from "any final judgment, order or decree made under the provisions of this chapter . . . ."  The same phrase existed in the statute when this Court in *T.J.H.* interpreted section 211.261 and determined that a juvenile certification resulting in the dismissal of a petition in the juvenile division is not a final judgment, order or decree from which an appeal is authorized.  The principal opinion's reliance on the 1994 amendments, therefore, overlooks the fact that these amendments did not modify the operative statutory language affecting the right of appeal in this case.

If a juvenile certification resulting in the dismissal of the petition in the juvenile division was not a "final judgment, order or decree" in 1972, it cannot be so now after the General Assembly's amendment retained the language upon which *T.J.H.* relied.  For that reason, even if this Court disagrees with the analysis and holding reached in *T.J.H.*, we should continue to follow it.  As this Court repeatedly has emphasized, "a decision of this Court should not be lightly overruled."  *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003).  As the United States Supreme Court has stated, *stare decisis* "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact."  *Vasquez v. Hillery*,

3

474 U.S. 254, 265-66 (1986).  Moreover, *stare decisis* is more strictly observed in cases involving statutory interpretation.  Our Court has stated "*stare decisis* is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 387 (Mo. banc 2014) (Fischer, J., dissenting).  This is because the legislature can alter statutory precedent by enacting new legislation.  For this reason, it is significant that the legislature amended section 211.261 after *T.J.H.* was decided but left in place the language *T.J.H.* relied upon and based its decision.

To be sure, *stare decisis* is not a rigid inevitability but, instead, a doctrine that "promotes security in the law by encouraging adherence to previously decided cases." *Indep.-Nat'l Educ. Ass'n v. Indep. Sch. Dist.,* 223 S.W.3d 131, 137 (Mo. banc 2007).  In considering whether to overrule precedent, this Court has considered several factors: whether a decision "has remained unchanged for many years," *First Bank v. Fischer & Frichtel, Inc.,* 364 S.W.3d 216, 224 (Mo. banc 2012); whether it is clearly erroneous and manifestly wrong, *Novak v. Kan. City Transit, Inc.,* 365 S.W.2d 539, 546 (Mo. banc 1963); and whether it violates a constitutional right.  *Watts v. Lester E. Cox Med. Ctrs.,* 376 S.W.3d 633, 644 (Mo. banc 2012).  Other pragmatic considerations include whether the rule defies practical workability, *Swift & Co. v. Wickham,* 382 U.S. 111, 116 (1965); whether the law has evolved such that the prior rule is merely an anachronism, *Patterson v. McLean Credit Union,* 491 U.S. 164, 173-174 (1989), *superseded on other grounds by* 42 U.S.C. § 1981(b); and whether circumstances have changed such that application of old rule harms public interest.  *Burnet v. Colo. Oil & Gas Co.,* 285 U.S. 393,

4

412 (1932) (Brandeis, J., dissenting), *overruled on other grounds by Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 387 (1938).[2]

This Court may disagree with the Court's statutory interpretation of section 211.261 in *T.J.H.*, but the statutory interpretation in *T.J.H.*, now nearly 50 years old, has not proven to violate an individual's constitutional rights. It has not become unworkable or an absurd vestige. Moreover, circumstances have not changed such that application of *T.J.H.* harms public interest. To the contrary, the policy reasons this Court provided in *T.J.H.* for not allowing appeal of a dismissal from juvenile court still exist today. An appeal would "obviously delay the prosecution of any proceeding" in either juvenile court or the circuit court, jeopardizing the chance of a speedy and just disposition for alleged juvenile offenders, victims, witnesses, and the community at large.[3] *T.J.H.*, 479 S.W.2d at 434

---

[2] This list is not exhaustive. Courts around the country have offered many considerations to balance, allowing for a case-by-case, individualized evaluation of the merits of renouncing precedent. *See, e.g.*, *State v. Wetrich*, 412 P.3d 984, 991 (Kan. 2018) (weighing the benefits of stare decisis against promoting the goal of consistent application of the law across jurisdictions); *Vitro v. Mihelcic,* 806 N.E.2d 632, 635 (Ill. 2004) (stating that a settled rule of law ought to be followed "unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests") (quoting *Maki v. Frelk*, 239 N.E.2d 445, 447 (Ill. 1968)); *McCulloch v. Maryland*, 17 U.S. 316, 401 (1819) ("An exposition of the constitution, deliberately established by legislative acts, on the faith of which an immense property has been advanced, ought not to be lightly disregarded."). As the Supreme Court stated in *Vasquez*, "the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for articulable reasons[.]" 474 U.S. at 266.

[3] This case presents a perfect example of the delays that result from an appeal of the certification ruling. On October 26, 2018, D.E.G., a 16-year-old juvenile, was detained by the juvenile division for alleged conduct that would be a crime if committed by an adult. A little more than two months later, the juvenile division certified D.E.G. as an adult and transferred the proceedings to the circuit court. D.E.G. remained detained and was moved from juvenile detention to the Jackson County jail, where he remains detained as of the

(citing *People v. Jiles*, 251 N.E.2d 529, 531 (Ill. 1969)). Justice delayed is justice denied, whether in the juvenile division or circuit court proceedings. "To permit interlocutory review would subordinate that primary issue and defer its consideration while the question of the punishment appropriate for a suspect whose guilt has not yet been ascertained is being litigated in reviewing courts." *Id.* (citing *Jiles*, 251 N.E.2d at 531).

These public policy considerations would not allow this Court to ignore legislative changes to the statutory provision, but in the absence of such changes, the valued policy

---

date of this opinion. On February 6, 2019, D.E.G. formally requested a speedy trial, and the circuit court immediately set the matter for trial. On February 8, 2019, D.E.G. filed his notice of appeal of the juvenile certification ruling. While the appeal was pending, D.E.G. filed a motion to continue the trial setting on July 24, 2019, in part because of this pending appeal. In the motion to continue, D.E.G. specifically waived his request for speedy trial. The circuit court granted D.E.G.'s request for continuance and reset the trial for February 18, 2020. On February 3, 2020, D.E.G. filed a second motion to continue the trial setting, again in part because of this pending appeal. The circuit court granted the motion and reset the trial for May 4, 2020. Because of the prohibition on in-person proceedings due to the COVID-19 pandemic, the circuit court again continued the trial setting on May 4, 2020. Based on the history of the case, however, D.E.G. presumably would have requested another continuance based in part on this pending appeal regardless of the health crisis. D.E.G.'s case is currently set for case management conference on July 10, 2020. Due the delays caused by this appeal and the additional challenges presented by the COVID-19 pandemic, it is difficult to imagine the circuit court resetting D.E.G.'s jury trial before October 2020, two years after his initial detention in this matter. Of course, D.E.G. could appeal any resulting adjudication or conviction from either the juvenile division or the circuit court that will further delay a final resolution of this matter. Clearly, this appeal has forfeited D.E.G.'s request for a speedy and just disposition of this matter at his own expense as he remains detained in jail, and at the expense of the alleged victims, the witnesses, and the community at large. Such a delay also frustrates the purpose of the juvenile code. The philosophy of the juvenile code is multifaceted and includes the value our society places on redirecting and rehabilitating youths, as well as the State's interests in protecting citizens from crime while protecting the best interests of the juvenile. *See State v. Arbeiter,* 408 S.W.2d 26, 29 (Mo.1966) (citing *State v. Shaw*, 378 P.2d 487 (Ariz. banc 1963)).

6

concerns further support application of *stare decisis*. Law practitioners and the public expect this Court to maintain its prior holdings and positions unless compelling reasons exist to do otherwise, and no such compelling reason is apparent here. "[T]his Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a satisfactory basis for violating the doctrine of *stare* decisis, at least in the absence of a recurring injustice or absurd results." *Crabtree v. Bugby*, 967 S.W.2d 66, 71-72 (Mo. banc 1998), *overruled on other grounds by Templemire*, 433 S.W.3d at 373. The amendments to section 211.261 did not change the language establishing the right to appeal from a final judgment, order, or decree. In consideration of these factors, this Court should not deviate from the law established in *T.J.H.*

## Conclusion

For the reasons above, I would follow our precedent in *T.J.H.* and dismiss this appeal. Therefore, I respectfully dissent.[4]

W. Brent Powell, Judge

---

[4] I also concur with Judge Fischer's dissenting opinion's conclusion that this matter should not be retransferred if this appeal is not dismissed. Even if this Court has the authority to retransfer this matter back to the court of appeals pursuant to article V, section 10 and prior case law, this Court, in its discretion, should not exercise this authority in this case. As Judge Fischer's dissenting opinion notes, some of the issues raised in this appeal are real and substantial and fall under this Court's direct appeal jurisdiction. Nonetheless, all the issues in this case have been fully briefed and argued, and this appeal should be resolved expeditiously due to the nature and status of the case, making retransfer inappropriate. *See supra* note 3. I also concur with Judge Fischer's dissenting opinion that section 211.071 is constitutional on its face and as applied to D.E.G.'s certification hearing.

7



# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF D.E.G.,       )
       )
       Appellant,      )
       )
v.       )      No.  SC97869
       )
JUVENILE OFFICER OF      )
JACKSON COUNTY,      )
       )
       Respondent.      )

## DISSENTING OPINION

### I.    Introduction

D.E.G. is alleged to have committed two acts that, if committed as an adult, would constitute crimes of first-degree assault and armed criminal action.  In accord with § 211.071, the juvenile division held a certification hearing and, thereafter, dismissed the juvenile petition and certified D.E.G. for prosecution by the State in a court of general jurisdiction.  D.E.G. appealed the juvenile division's judgment originally to the court of appeals and thereafter filed an application for transfer prior to opinion, requesting this Court reexamine its prior holding that a certification order pursuant to § 211.071 is not an appealable order.  His notice of appeal, application for transfer, and brief on appeal to this Court challenge the constitutional validity of the juvenile certification process.  The

principal opinion holds that a juvenile certification and order of dismissal pursuant to § 211.071 is an appealable order, but then refuses to decide the issues presented in that appeal. Instead, the principal opinion purports to retransfer the case to the court of appeals to decide those issues, including the issues of whether Missouri statutes are constitutional. As a result, the principal opinion's decision to retransfer this case to the court of appeals makes the jurisdictional determination that D.E.G.'s constitutional challenges are merely colorable and not real and substantial. Even assuming this conclusion is correct, and it is not, this Court should not pick and choose from among the questions presented. Instead, it should decide both the threshold issue of appealability as well as the constitutional and non-constitutional claims already briefed and argued in this Court. Because the Missouri statutes are constitutionally valid and D.E.G. received all of the process he was due pursuant to § 211.071, which is all that is required by Supreme Court of the United States precedent, I respectfully dissent.

## II. Factual and Procedural History

The allegations against D.E.G. are as follows: On October 24, 2018, D.E.G. was with several fellow juveniles when he expressed an interest in confronting several nearby members of a gang. He had a gun with him. The victim refused to go with D.E.G., and D.E.G. pointed his gun at the victim asking for the victim's gun. When the victim refused, D.E.G. struck him in the head with his gun and grabbed the victim's backpack containing the gun. The victim stood up to try to grab the backpack and D.E.G. shot him at point-blank range three times and fled the scene. The victim remains paralyzed from the waist down because of the shooting.

2

On October 26, 2018, the Juvenile Officer of Jackson County filed a petition alleging D.E.G. required care and treatment as a result of his actions. The Juvenile Officer filed a motion for a certification hearing pursuant to § 211.071 and a certification report recommending D.E.G. be certified to stand trial in a court of general jurisdiction. D.E.G. received written notice of the hearing containing a description of the certification process. The written notice provided, in part:

> The purpose of the [certification] hearing is to determine whether the juvenile is a proper subject to be dealt with under the provisions of the juvenile code, and if the Court finds the juvenile is not a proper subject, the petition will be dismissed to allow prosecution of the juvenile under general law.[1]

The juvenile division held the certification hearing on January 2, 2019. D.E.G. was present and represented by counsel. Deputy Juvenile Officer Sandy Rollo-Hawkins testified to the contents of the Certification Report she prepared for the juvenile division pursuant to § 211.071(6). She testified she prepared the Report using "information from the social file, which includes police reports, court documents, prior certification reports that were completed, school records, mental health records," and also interviewed D.E.G.'s mother. She also consulted information from prior certification reports filed

---

[1] The description D.E.G. received is consistent with § 211.071's express purpose:
> A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court *in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile justice system*.

§ 211.071.6 (emphasis added). It is also consistent with the aims of juvenile certification proceedings, as outlined by the Supreme Court of the United States: "[T]ransfer provisions represent an attempt to impart to the juvenile-court system the flexibility needed to deal with youthful offenders who cannot benefit from the specialized guidance and treatment contemplated by the system." *Breed v. Jones*, 421 U.S. 519, 535 (1975).

with the juvenile division. When the Report was offered into evidence, D.E.G. objected to its admittance on the ground the report was hearsay and violates his right to confrontation.[2] The juvenile division overruled the objection and admitted the Report.

Rollo-Hawkins also testified to the Report's contents. D.E.G. lodged a "continuing objection to hearsay as this line of questioning is regarding the allegations in the incident which Ms. Rollo-Hawkins has no personal knowledge[.]." In overruling the objection, the juvenile division reasoned:

> I understand. The report contemplates that [Rollo-Hawkins] will get information from other sources. And I do note your hearsay objection to it but it is overruled. And as I do, periodically, note that as it relates to the allegations that have been lodged against the juvenile, I'm not assuming they're true for purposes of the hearing today. This is simply a recitation of her understanding of the allegations. So they're received for that purpose and no other and your objection is overruled.

Cert. Tr. at 8. Rollo-Hawkins used the report to answer questions directed at each of the criteria outlined in § 211.071.6. *Id*. at 10-24. D.E.G.'s counsel extensively cross-examined Rollo-Hawkins. *Id*. at 25-33.

Several days later, the juvenile division issued a judgment of dismissal pursuant to § 211.071. The redacted judgment is attached to this opinion as "Exhibit A." The judgment includes findings determining the court had jurisdiction of the cause and parties, that D.E.G. was represented by counsel, that the hearing was held in the presence of D.E.G. and his counsel, and the reasons underlying the juvenile division's decision—

---

[2] D.E.G.'s counsel failed to specify whether he was objecting based on the confrontation clause of the Missouri Constitution or the confrontation clause of the United States Constitution. Either way, a juvenile certification hearing is not a "criminal prosecution[]," it is a statute-based, non-adjudicatory procedure to which neither confrontation clause applies. *See* U.S. Const. amend. VI; Mo. Const. art. I, § 18(a); § 211.071.

4

specifically tailored to each of the § 211.071.6 factors. Pursuant to the judgment, jurisdiction over D.E.G. was transferred to a court of general jurisdiction. D.E.G. appealed the juvenile division's judgment to the court of appeals and applied to this Court for transfer prior to opinion. Mo. Const. art. V, § 10; Rule 83.01.

In addition to asking this Court to decide whether the current statutes permit an appeal from the outcome of a certification proceeding, the application for transfer prior to opinion of the court of appeals claimed "Missouri's certification process … and Missouri Supreme Court Rule 129.04, as applied in this jurisdiction, and as applied to D.E.G., are unconstitutional." The application for transfer prior to opinion also claimed this case presented questions of general interest and importance and in support of his application for transfer, D.E.G. stated:

> The process fails constitutional requirements by applying a presumption of guilt upon the Juvenile at certification hearing. It fails constitutional requirements by routinely and systematically ignoring the rules of evidence[,] … denying the right to confront witness and concluding in a decision based exclusively on hearsay[.] … its vague or nonexistent burden of proof[,] … [and] the court's consideration of prior unadjudicated referrals[.]

App. for Transfer, at 7-8. In the section of the notice of appeal originally filed in the court of appeals labeled "Issues Expected To Be Raised On Appeal," D.E.G. provided, in part: "Missouri's certification process is unconstitutional in numerous ways." D.E.G.'s brief raised several constitutional challenges to § 211.071, including that Missouri's certification process violates equal protection, due process, and separation of powers.

"[A]ppellate review of a juvenile division's decision to terminate jurisdiction as to a youthful offender is limited to a determination of whether in the totality of the

5

circumstances the court abused its discretion." *A.D.R. v. Rone*, 603 S.W.2d 575, 580-81 (Mo. banc 1980). A court abuses its discretion "when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Howard v. City of Kansas City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011).

### III. This Court Cannot Retransfer the Case to the Court of Appeals and, Even If It Can, It Should Not Do So

I dissent from the principal opinion's holding that this Court should grant transfer in this case, decide only the issue it wants to decide, and then retransfer the case to the court of appeals to decide the remaining issues.[3]

"This Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it." *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017). Article V, § 3 of the Missouri Constitution provides this Court has "exclusive appellate jurisdiction in all cases involving the validity … of a statute … of this state[.]" "[T]his Court's exclusive appellate jurisdiction is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). "The constitutional issue must be real and substantial, not merely colorable." *Id*. "In the context of the 'not merely colorable' test, the word 'colorable' means feigned, fictitious or counterfeit, rather than plausible." *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 52 (Mo. banc 1999). A clear indicator of a "real and

---

[3] I concur in the dissenting opinion of Judge Powell.

substantial" constitutional challenge is when it raises an issue of first impression with this Court. *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 429 (Mo. banc 2016).

D.E.G.'s constitutional challenges to § 211.071 are real and substantial, not merely colorable, because they raise several issues of first impression with this Court. This Court has not addressed whether the certification process outlined in § 211.071 violates equal protection nor whether the juvenile division system violates the separation of powers. In addition, his due process challenge, though not novel in its entirety, raises novel constitutional challenges including whether juveniles have a due process right to the strict application of the rules of evidence in certification proceedings. Accordingly, these claims fall within this Court's exclusive appellate jurisdiction and cannot be retransferred to the court of appeals.

The principal opinion explicitly holds that D.E.G.'s constitutional claims regarding § 211.071 and the Missouri juvenile certification process are not real and substantial, but merely colorable. Slip op. at 4, n.2. In my view, these claims – even though they ultimately lack merit – have been preserved and fall within this Court's "exclusive appellate jurisdiction" under article V, section 3, of the Missouri Constitution. This Court has steadfastly held that, even when the challenge is ultimately rejected by this Court on the merits, it holds no bearing on whether the challenge was real and substantial. *Rodriguez*, 996 S.W.2d at 52 (citing a number of this Court's previous decisions in which the "Court's jurisdiction was properly based on novel constitutional challenges even though the challenges were ultimately rejected on the merits, and indeed, were rejected by unanimous vote.").

7

Even if the principal opinion's jurisdictional analysis was correct, and it is not, the practice of deciding parts of cases and retransferring them to the court of appeals to decide the remainder – however convenient, judicially efficient, and even good policy it may be – lacks any explicit support in the Constitution. Art. V, § 10 provides, in pertinent part: "The supreme court *may finally determine all causes coming to it from the court of appeals*, whether by certification, transfer, or certiorari, the same as on original appeal." (Emphasis added). In my view, once this Court grants transfer from the court of appeals, it should determine all issues properly before it unless some extraordinary circumstance justifies doing less. *Id.*[4] Therefore, even though the principal opinion answers the question of whether an aggrieved party may appeal from the outcome of a juvenile certification proceeding, in my view it shirks this Court's responsibility,[5] after full briefing and argument, to resolve the other questions presented, including whether Missouri's certification process and D.E.G.'s hearing met statutory and constitutional standards.

## IV. D.E.G.'s Hearing Complied with Statutory and Constitutional Standards

"Constitutional challenges to a statute are reviewed *de novo*." *St. Louis Cty. v.*

---

[4] This Court's Rules recognize only a single exception to this obligation. Rule 83.09 provides:
> Any case coming to this Court from a district of the court of appeals, whether by certification, transfer or certiorari, may be finally determined the same as on original appeal. If, however, in cases transferred on order of this Court, the Court concludes that the transfer was improvidently granted, the case may be retransferred to the court of appeals

[5] Even if the principal opinion's determination that D.E.G.'s constitutional challenges are merely colorable and not real and substantial enough to implicate this Court's exclusive appellate jurisdiction, which it is not, the Court should not retransfer this case to the court of appeals because these issues and others have been fully briefed and argued in this Court and a retransfer will needlessly delay the resolution of this case.

8

*Prestige Travel, Inc.*, 344 S.W.3d 708, 712 (Mo. banc 2011) (internal quotations omitted). Statutes are presumed constitutionally valid and will not be overturned unless the person challenging the validity of the statute meets their burden of proving the statute "clearly and undoubtedly violates the constitution." *Id.* (internal quotations omitted).

## A. Due Process

D.E.G. argues his hearing did not meet statutory or constitutional standards because Rollo-Hawkins testified about the contents of the investigatory report, including allegations against D.E.G., that were outside Rollo-Hawkins' personal knowledge. This argument, however, mistakenly conflates a juvenile certification hearing with an adjudicatory criminal proceeding. The certification process merely considers "the nature of the offenses alleged, not whether the juvenile did (or did not) commit them." *State v. Nathan*, 404 S.W.3d 253, 260 (Mo. banc 2013). A juvenile certification proceeding need not "conform with all of the requirements of a criminal trial or even of the usual administrative hearing[,]" but must "measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 562 (1966). In *Nathan*, this Court relied on *Kent* in holding:

> The process is constitutional if a hearing is provided, the juvenile is given the right to counsel and access to his or her records, and it results in a decision that sets forth the basis for the decision to relinquish jurisdiction in a way that is sufficient to permit meaningful appellate review.

404 S.W.3d at 260.

The certification process outlined in § 211.071 is not a constitutional right, it is a statutory right. *Kent*, 383 U.S. at 557. D.E.G., as a youthful offender, "was by statute

entitled to certain procedures and benefits as a consequence of his statutory right to the exclusive jurisdiction of the Juvenile [Division]." *Id*. (internal quotations omitted). In *Kent*, the Supreme Court answered the due process question by looking to the controlling statute, determining what process is guaranteed to the juvenile offender by statute, and then applying the law to what process the juvenile offender received. *Id*. at 557, 559-64. As a statutory right, the process due to juvenile offenders before certification is defined purely by statute, as "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." *Breed*, 421 U.S. at 537. Therefore, to determine whether D.E.G.'s right to due process was violated, this Court must determine whether the juvenile division adhered to § 211.071 when it dismissed him from juvenile division and transferred his case to a court of general jurisdiction.

Section 211.071 requires the juvenile be given written notification of a transfer hearing containing a statement describing the certification procedure. § 211.071.4. The juvenile is entitled to a hearing. § 211.071.1. Section 211.071.6 provides, in full:

> A written report shall be prepared in accordance with this chapter developing fully ***all available information relevant to the criteria which shall be considered by the court*** in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile justice system. These criteria shall include but not be limited to:
> > (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
> > (2) Whether the offense alleged involved viciousness, force and violence;
> > (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially

if personal injury resulted;
(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
(6) The sophistication and maturity of the child as determined by consideration of his home and environmental situation, emotional condition and pattern of living;
(7) The age of the child;
(8) The program and facilities available to the juvenile [division] in considering disposition;
(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile [division]; and
(10) Racial disparity in certification.

(emphasis added). The hearing must be on the record, the juvenile division must receive evidence "on whether the juvenile is a proper subject to be dealt with under the juvenile code[,]" counsel may examine the juvenile officer who prepared the report, and "[a]ll parties shall be afforded the opportunity to testify, present evidence, cross-examine witnesses, and present arguments of law and fact and arguments concerning the weight, credibility and effect of the evidence." Rule 129.04b. If, after the hearing, the juvenile division exercises its discretion to dismiss the petition and certify the juvenile for prosecution in a court of general jurisdiction, it must enter a dismissal order including:

(1) Findings showing that the court had jurisdiction of the cause and of the parties;
(2) Findings showing that the child was represented by counsel;
(3) Findings showing that the hearing was held in the presence of the child and his counsel; and
(4) Findings showing the reasons underlying the court's decision to transfer jurisdiction.

§ 211.071.7.

11

Section 211.071 does not prescribe that the general rules of evidence apply to juvenile certification proceedings. While this Court has not been previously asked to address this issue, every federal court that has addressed the issue has held that the rules of evidence do not strictly apply in juvenile certification proceedings. *See United States v. Juvenile Male*, 554 F.3d 456, 460 (4th Cir. 2009); *United States v. SLW*, 406 F.3d 991, 995 (8th Cir. 2005); *United States v. Doe*, 871 F.2d 1248, 1255 (5th Cir. 1989); *Gov't of Virgin Islands in re A.M.*, 34 F.3d 153, 160-61 (3rd Cir. 1994); *United States v. Y.A.*, 42 F.Supp.3d 63, 74-75 (D. D.C. 2013); *United States v. C.P.A.*, 572 F.Supp.2d 1122, 1124-25 (D.N.D. 2008) *United States v. E.K.*, 471 F.Supp. 924, 930 (D. Or. 1979). Similarly, several state courts that have addressed the issue have held the general rules of evidence do not strictly apply to juvenile certification proceedings, absent the statutes expressly prescribing that the general rules of evidence apply. *See In re C.R.M.*, 552 N.W.2d 324, 326-27 (N.D. 1996); *State v. Wright*, 456 N.W.2d 661, 664 (Iowa 1990); *Commonwealth v. Watson*, 447 N.E.2d 1182, 1185 (Mass. 1983); *People v. Taylor*, 391 N.E.2d 366, 372 (Ill. 1979); *In re Welfare of T.D.S.*, 289 N.W.2d 137, 140-41 (Minn. 1980); *In re Harbert*, 538 P.2d 1212, 1217 (Wash. 1975).

It is undisputed the juvenile division adhered to § 211.071.7 when it dismissed the petition and certified D.E.G. for prosecution in a court of general jurisdiction. D.E.G. was represented by counsel. He received written notification of his hearing with a complete description of the certification process. He received a hearing, which was on the record. Rollo-Hawkins conducted an investigation and provided the juvenile division with an investigatory report concerning all criteria relevant to the juvenile division's

12

decision to dismiss the petition and transfer the case. Rollo-Hawkins was examined by counsel and testified about each of the 10 criteria relevant to the juvenile division's determination. D.E.G.'s counsel cross-examined Rollo-Hawkins and argued against the juvenile division's dismissal. The juvenile division's detailed findings and conclusions included its reasoning regarding each of the § 211.071.6 criteria and provided substantial explanation of why D.E.G. was not a proper subject to be dealt with under the juvenile code.

## B. Equal Protection

D.E.G. argues § 211.071 violates the equal protection clause of the Fourteenth Amendment as applied to him because the certification process disproportionately applies certification proceedings to African American juveniles. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Whether a discriminatory intent or purpose exists depends on consideration of "the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington*, 426 U.S. at 242. However, the Supreme Court has not "held that a law, neutral on its face and serving ends otherwise within the power of the government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." *Id.*

13

D.E.G. contends that because he is African American, the certification process inherently violated his right to equal protection, pointing to statistics purportedly showing the certification process's disproportionate impact on African American juveniles in support. However, D.E.G. has failed to point to any part of his certification process tending to indicate a discriminatory intent. The juvenile division, in line with § 211.071.6(1), also considered evidence from D.E.G. regarding the racial disparity in certification before making its decision. But mere statistical information cannot change the objective facts that D.E.G. is charged with committing an especially violent offense resulting in the permanent disfigurement of the victim. There was not sufficient evidence to support his claim that the certification process was used to violate his right to equal protection. Instead, when fully considering the statutory factors as applied to D.E.G., and the nature of the offense as alleged, the juvenile division did not abuse its discretion in concluding that D.E.G. is not a proper subject to be dealt with under the juvenile code.

### C. Separation of Powers

D.E.G. argues Missouri's juvenile division structure violates the separation of powers established in article II, § 1 of the Missouri Constitution:

> The powers of government shall be divided into three distinct departments-- the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

He argues in the juvenile system, the prosecutorial and judicial roles are not distinct in that juvenile officers and the attorneys for the juvenile officers are officers of the court

14

and are responsible for bringing cases against juveniles in front of judges. This structure, D.E.G. contends violates the separation of powers in that the judiciary exercises the prosecutorial discretion exclusively reserved for the executive branch.

"[P]roceedings under the juvenile code are civil, not criminal." *J.D.H. v. Juvenile Ct. of St. Louis Cty.*, 508 S.W.2d 497, 500 (Mo. banc 1974). This is because the juvenile division's purpose is not punitive, but rather is focused on "continuing care, protection and rehabilitation of the juvenile[.]" *Id*. The juvenile certification process does not involve any exercise of prosecutorial discretion because it does not involve any prosecution. *Nathan*, 404 S.W.3d at 260. The juvenile system is in place to rehabilitate juveniles through a purely civil process in lieu of criminal prosecution, and its structure does not violate the separation of powers by infringing on the executive branch's prosecutorial discretion.

## V.    Conclusion

In my view, D.E.G. made real and substantial constitutional challenges to the statutes governing his certification hearing and, as a result, those claims fall within the exclusive appellate jurisdiction of this Court such that retransfer to the court of appeals is improper. Nevertheless, even if the principal opinion's conclusion—that these constitutional challenges "are all colorable rather than real and substantial" and, therefore, do not fall within this Court's exclusive jurisdiction—is correct, this Court should issue an opinion resolving these issues because they have been fully briefed and argued in this Court.

Moreover, the issue of whether hearsay testimony is admissible at a juvenile

15

certification proceeding is a matter of first impression for Missouri courts and is certainly generally interesting and important and should be decided by this Court. Consistent with the federal courts and other state courts, that Rollo-Hawkins testified about matters in the investigatory report outside of her direct, personal knowledge may go to the weight of her given testimony in the juvenile division but not does justify reversing and remanding for another hearing when no statutory or constitutional requirement was violated. The juvenile division followed all applicable statutory procedures related to the juvenile certification process, and based on this record, the decision to dismiss the petition and transfer D.E.G. to a court of general jurisdiction was not an abuse of discretion. The judgment should be affirmed.

_____
Zel M. Fischer, Judge

# Exhibit A

FILED
FAMILY COURT RECORDS
09-Jan-2019 08:55
CIRCUIT COURT OF JACKSON COUNTY, MO
BY Carmen Morrison

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## FAMILY COURT DIVISION

IN THE INTEREST OF:       ) CASE NUMBER: ███████

                           )

████████████           )

                           )

SEX: █    BORN: ████████    ) LIFE NUMBER: ████████

## JUDGMENT OF DISMISSAL PURSUANT TO SECTION 211.071, RSMo

On January 2, 2019, the above matter came on for hearing pursuant to section 211.071, RSMo. The Juvenile Officer appeared by Daniel Barry. The Juvenile appeared in person from Secure Detention, and through counsel, Tim Honse. The Juvenile's mother, ████████, appeared in person. Deputy Juvenile Officer Sandy Rollo-Hawkins was also present.

This matter is currently pending before the Court pursuant to a Petition filed on October 26, 2018. Because of the allegations in the Petition, and pursuant to section 211.071.1, RSMo, a hearing is required on the question of whether the Juvenile is a proper subject to be dealt with under the provisions of the juvenile code or whether the case should be dismissed and the Juvenile transferred to a court of general jurisdiction for prosecution under the general law. The Court first took up the Juvenile's Motion to Deny Certification of Juvenile for Unconstitutionality of Missouri's Certification Process, filed January 2, 2019. Being duly advised in the premises, the Court OVERRULED that motion. The Court then received evidence and argument. Having considered the credible and admissible evidence on the issue in light of, among other things, the statutory factors set out in section 211.071.6, the Court finds and orders as follows:

1.      Written notification of these proceedings has been given to the Juvenile and his custodian as required by section 211.071.4.

CERTIFIED COPY
I certify that the foregoing document is a full,
true and complete copy of the original on file
in my office and of which I am legal custodian.
Mary A. Marquez
Court Administrator
Circuit Court of Jackson County, Missouri
09-Jan-2019 By Carmen Morrison

2. As noted above, the Juvenile was present for the hearing and was represented by counsel.

3. The Court has jurisdiction over the parties to – and subject matter of – this action.

4. On October 26. 2018, the Juvenile Officer filed a Petition alleging in two counts that the Juvenile had committed acts that would be crimes were he charged as an adult, as follows: 1) Assault in the First Degree – Class A Felony; 2) Armed Criminal Action – Unclassified Felony.

5. In making its determinations regarding whether to dismiss this action, the Court has considered the allegations in the Petition. The Court has not assumed the truth of the allegations, nor is it required to determine whether they are true or false. *State v. Nathan*, 404 S.W.3d 253, 260 (Mo. banc 2013). In this regard, and although there was some evidence presented which would bear on the "guilt" or "innocence" of the Juvenile, the Court has focused its attention on the Juvenile. *Id.* ("Even though the juvenile court may consider the allegations in the petition in deciding whether to relinquish its jurisdiction, section 211.071.6 refers solely to the *nature of the offenses alleged*, not whether the juvenile did (or did not) commit them") (Emphasis supplied). As noted above, the Court has also considered all of the factors set forth in section 211.071.6, as follows:

**Seriousness of The Offense Alleged and Whether the Protection of the Community Requires Transfer to a Court of General Jurisdiction.**

The Juvenile is alleged to have committed the Class A Felony of Assault in the First Degree, for shooting and wounding ███████. The range of punishment under Missouri law for this offense is a term of incarceration of between 10 and 30 years, or life

2

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

in prison. In addition, the Juvenile has been charged with one count of the Unclassified Felony of Armed Criminal Action, which carries a potential sentence of a minimum of three years in prison, with no upward limit on the number of years of imprisonment facing him. These are considered some of the most serious offenses under the criminal code, and are undoubtedly crimes from which the community has a valid expectation of being protected.

**Whether the Offense Alleged Involved Viciousness, Force and Violence.**

The Juvenile is alleged to have seriously injured ███████████ by shooting him at least three times with a handgun. ████'s colon and spinal cord were injured as a result of the assault. He was hospitalized for more than a month. He had to have surgery to repair his colon, was in the hospital's intensive care unit on a ventilator for a significant period of time and, although he is out of the hospital now, is paralyzed from the waist down. Prior to shooting ████, the Juvenile allegedly pistol-whipped him because he would not give the Juvenile a gun he was carrying so the Juvenile could use it to go confront members of a rival gang who were allegedly in the area. The shooting occurred in the hallway of an apartment building with several occupied units, and without the Juvenile having any concern for the safety of others who might have been injured or killed. These alleged offenses involved viciousness, force, and violence.

**Whether the Offense Alleged was Against Persons or Property with Greater Weight Being Given to the Offense Against Persons, Especially if Personal Injury Resulted.**

The alleged offenses were crimes against a person, and resulted in serious and possibly permanent personal injuries to ███████████ Greater weight is therefore given to this factor in considering whether to dismiss this action.

3

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

**Whether the Offense Alleged is a Part of a Repetitive Pattern of Offenses Which Indicates that the Child May Be Beyond Rehabilitation Under the Juvenile Code.**

The Juvenile's history of referrals goes back to December 2016, with many of those referrals involving allegations of violence, including murder. It is correct that several of the referrals to this Court involving the Juvenile were rejected due to insufficient evidence; however, it is noteworthy that at least two were reportedly rejected because the alleged victim refused to cooperate with police because of a fear of retaliation.

The most recent referral involving the Juvenile (Case No. ███████████) involved allegations that the Juvenile murdered ████████████ and seriously wounded ███████████ during a shooting on April 14, 2018. The Court held a hearing in that case pursuant to section 211.071, RSMo, determined that the Juvenile was not a proper subject for the juvenile court and dismissed the case. Despite an earlier indication from the Jackson County Prosecuting Attorney's office that it would pursue charges against the Juvenile, the office had subsequently determined that it would not file charges against him because it appeared he had been acting in lawful self-defense.[1] The Juvenile was then released from custody.

While the Juvenile could have used that experience as motivation for charting a more productive course for his life, he is alleged to have instead committed the instant offenses – less than two months after his release from custody. Thus, although the fact that none of these referrals resulted in adjudications certainly entitles the Court to give them lesser weight, it is nevertheless clear from a review of the Court's records that the

---

[1] A failure on the part of the Juvenile Officer and the Prosecuting Attorney's office to maintain ongoing and productive communication from April to August 2018 resulted in this information not being known until *after* the Court had dismissed the action.

4

21

Juvenile's history of allegedly serious and violent criminal conduct – combined with the other evidence before the Court here – is indicative of a Juvenile exhibiting a repetitive and increasingly violent pattern of conduct.

**The Record and History of the Child, Including Experience with the Juvenile Justice System, Other Courts, Supervision, Commitments to Juvenile Institutions and Other Placements.**

The Certification Report prepared by DJO Rollo-Hawkins and required by section 211.071.6 was received in evidence, as was the Juvenile's Social File. DJO Rollo-Hawkins testified credibly regarding the facts relevant to the Court's consideration of this factor, and the Certification Report accurately set forth the Juvenile's record and history. As noted above, prior to the April 2018 filing in Case No. ███████, he has had no prior history with the Family Court because delinquency referrals made to this Court had to be rejected. In addition, there have been no abuse or neglect referrals made regarding him; accordingly, there has been no prior opportunity for the Juvenile to be under this Court's supervision or to be provided services.

As set forth in the Certification Report and its addendum, and as memorialized in the Violation Reports contained in the Juvenile's Social File, when the Juvenile was in Secure Detention in connection with Case No. ███████, he demonstrated aggressive and assaultive behaviors on numerous occasions including participating in a group assault on August 24, 2018. These involved verbal and physical altercations with other residents – most of which have been instigated by him – as well as cursing at, threatening, and physically assaulting staff. Since being in Secure Detention in connection with this referral, he has received several *additional* violations, including refusing to follow instructions, cursing at staff, and participating in an assault on December 13, 2018 in which he joined in a physical altercation between two other

5

residents, and punched and stomped on the head of one of the residents while that youth was on the floor. Considered in conjunction with the other evidence considered by the Court regarding the Juvenile's long history of aggressive and defiant behavior at home and at school, these behaviors cannot be explained away by simply attributing them to the stress associated with being placed in Secure Detention, and are instead indicative of an individual with assaultive behaviors that are beyond the juvenile system's ability to manage or modify.

**The Sophistication and Maturity of the Child as Determined by Consideration of His Home and Environmental Situation, Emotional Condition and Pattern of Living.**

Again, the Court considered this issue in the context of the Certification Report and testimony of DJO Rollo-Hawkins as well as the other evidence in the case. The Juvenile has a history of severe behavior problems going back several years. These issues have included fighting, leaving home without permission, lying, aggressive and assaultive conduct, verbally abusing both peers and authority figures such as school personnel, and abuse of drugs. His mother unsuccessfully attempted to address the Juvenile's issues by sending him to California to live with his brother's family, placing him in residential drug treatment at Pathways in Columbia, Missouri, taking him to obtain a mental health evaluation as a young child and taking him to Swope Health Services for a psychiatric evaluation and counseling a few years ago.

Throughout this time, the Juvenile's behaviors have only intensified, culminating with the murder and assault allegations in Case No. ███████. As noted above, when he was released from custody in August 2018, his mother reported that she and other members of the Juvenile's support system attempted to use that experience as an impetus for change; however, the Juvenile's mother reported that he almost immediately

6

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

began engaging in the same destructive behavior. The Juvenile's history and these allegations involve not only a lack of impulse control representative of a teenager, but are indicative of an increased level of criminal sophistication associated with obtaining and using drugs, firearms, and engaging in illegal and violent behaviors.

**Age of the Juvenile.**

The Juvenile's date of birth is ███████████, making him a little more than 16 years old.

**The Program and Facilities Available to the Juvenile Court in Considering Disposition.**

**Whether or Not the Child Can Benefit from the Treatment or Rehabilitative Programs Available to the Juvenile Court.**

When evaluating these factors, the Court takes into account: (1) the Juvenile's amenability to treatment within existing programs; (2) the physical security of the facilities; and (3) the length of time available for treatment within the juvenile system. *See In re A.D.R.*, 603 S.W.2d 575 (Mo. banc 1980). There are no services within Jackson County's Family Court Field Services or Residential Services Programs that are designed or suited to address or treat a Juvenile alleged to have committed such a violent offense. In addition, none of the services provided here at Family Court are in secure settings, which the Court deems necessary to ensure the safety of the public.

The only conceivably suitable placement for the Juvenile within the juvenile system were the pending allegations adjudicated and sustained by this Court would be the Missouri Division of Youth Services (DYS). Although the decision of where to place the Juvenile is exclusively that of DYS, a secure DYS facility would likely be the only appropriate setting for the Juvenile in the circumstances before the Court. The alleged circumstances of these violent offenses cause the Court to conclude he is not amenable to

7

24

the types of cognitive and pro-social skill building programs and services that would be offered by DYS, even in a secure facility. Even though at 16 years old, he would conceivably have a significant amount of time in DYS care prior to turning 18, the Juvenile's long history of aggressive, defiant, and increasingly violent behaviors – combined with the viciousness of the allegations currently before the Court – causes the Court to conclude that the juvenile system is not able to effectively address these issues and rehabilitate this Juvenile while simultaneously keeping its commitment to keep the community safe.

**Racial Disparity in Certification.**

The Court has evaluated this factor in light of Court records (which were made a part of the Certification Report received in evidence). Neither the race of the Juvenile nor that of the alleged victims has been considered by this Court in entering this Order. Further, the Court finds that the race of the Juvenile and victims had no impact on the Juvenile Officer's determination of which allegations to make against the Juvenile, or on the question of whether or not to seek certification.

Based on its evaluation of the admissible and credible evidence and the totality of the circumstances, including all of the above factors, the Court concludes that the Juvenile is not a proper subject to be dealt with under the juvenile code. Accordingly, IT IS HEREBY ORDERED AND ADJUDGED, as follows:

1.    The Petition filed in this case on October 26, 2018 is DISMISSED.

2.    Jurisdiction over ████████████ is hereby transferred to a court of general jurisdiction for prosecution of him under the general law.

8

25

3.          █████████     is hereby released and discharged from the jurisdiction of the Family Court.

4.        A copy of the Petition and this Order/Judgment shall be provided to the appropriate prosecuting attorney by the Juvenile Officer.

IT IS SO ORDERED.

January 9, 2018
_____
Date

_____
J. DALE YOUNGS
Judge

## NOTICE OF ENTRY OF JUDGMENT

You are hereby notified that on __09-Jan-2019__ the Family Court, Juvenile Division, of Jackson County, Missouri made and entered the above judgment in this case:

You are further notified that you may have a right of appeal from this judgment under Rule 120.01 and section 211.261, RSMo, which provides that:

1. An appeal shall be allowed to the juvenile from any final judgment made under the Juvenile Code and may be taken on the part of the juvenile by the custodian.

2. An appeal shall be allowed to custodian from any final judgment made under the Juvenile Code that adversely affects the custodian.

3. Notice of appeal shall be filed in accordance with Missouri law.

4. Neither the filing of a notice of appeal nor the filing of any motion subsequent to the judgment shall act to stay the execution of a judgment unless the court enters an order staying execution.

_____
Deputy Court Administrator

Notice of the entry of the above and foregoing was provided via the Court's electronic filing system to counsel of record with copies to:

9

26

Electronically Filed - Juvenile Office Jackson - February 08, 2019 - 04:24 PM

SANDY L ROLLO-HAWKINS
CMO/DJO/JPO

DANIEL BARRY
Attorney for the Juvenile Officer
625 E. 26th St.
Kansas City, MO 64108
(816) 435-4725
FAX: (816) 435-4884

TIM HONSE
Office of the Public Defender
324 E. 11th St.
20th Floor
Kansas City, MO 64106

Natural Mother

VICTIM SERVICES
Victim Services
625 E. 26TH STREET
KANSAS CITY MO 64108
(816) 435-4818
FAX: (816) 435-4793



10